# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

NATIONAL STAFFING SOLUTIONS, INC., a Florida Corporation,

    Plaintiff,

v.

Ascendo Resources, LLC, a Florida Corporation, Amy Costello, Kristofer Munch, Steven Meadows, Jacylyn Atcachunas, Michael Foor, and Benjamin Benami, individuals,

    Defendants.

_____/

Case No.

JURY TRIAL DEMAND

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, NATIONAL STAFFING SOLUTIONS, INC. ("National"), a Florida Corporation, hereby files this Complaint against Defendants, ASCENDO RESOURCES, LLC ("Ascendo"), a Florida LLC, and against AMY COSTELLO ("Costello"), KRISTOFER MUNCH ("Munch"); STEVEN MEADOWS ("Meadows"); JACYLYN ATCACHUNAS ("Atcachunas"); MICHAEL FOOR ("Foor"); BEN BENAMI ("Benami" and collectively with Costello, Munch, Meadows, Atcachunas, and Foor, the "Individual Defendants"), individuals, and in support thereof states as follows:

### INTRODUCTION

1. Five of the six Individual Defendants are former employees of National's healthcare staffing unit who have left National and joined Ascendo to

create Ascendo's healthcare staffing unit based on National's trade secrets, confidential and proprietary business information, methods, practices, and know-how in direct violation of the Individual Defendants' contractual and other obligations to National.

2. National seeks to stop further copying and use of its confidential business information by Ascendo and the Individual Defendants and to remove National's confidential business information from Ascendo and the Individual Defendants' possession.

## **PARTIES**

3. National is a corporation organized under the laws of the State of Florida, with its principal place of business in Orange County, Florida.

4. Ascendo is a limited liability company organized under the laws of the State of Florida with its principal place of business in Miami-Dade County, Florida. Ascendo also has two offices in Central Florida, one in Maitland, Florida and the second, its Healthcare unit has an office in Orlando Florida.

5. Costello is an individual residing in Orlando, Florida. She is a former National employee and the current President of Ascendo Healthcare and a "Partner" at Ascendo.

6. Munch is an individual residing in Orlando, Florida. Munch is the only Individual Defendant who was not a former employee of National; he is the current Vice President of Operations at Ascendo Healthcare.

7. Meadows is an individual residing in Orlando, Florida. Meadows was a former Senior Account Manager of National and the current National Business Development Manager at Ascendo.

8. Atchachunas is an individual residing in Orlando, Florida. She was an Account Manager Coordinator at National and is now a Sales Manager at Ascendo.

9. Foor is an individual residing in Winter Park, Florida. Foor was a Recruiter at National and is now a Business Development Manager.

10. Benami is an individual residing in Winter Park, Florida. He was a Recruiter at National and is currently employed by Ascendo.

## JURISDICTION AND VENUE

11. This is an action for monetary damages relating to the misappropriation of National's trade secrets and confidential and proprietary information in violation of the laws of the United States and the State of Florida.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred in this judicial district.

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over National's state and common law claims pursuant to 28 U.S.C. § 1367(a). Judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises its subject matter jurisdiction over all causes of action stated herein.

## **GENERAL ALLEGATIONS**

14. National provides employment agency services, namely in the temporary and permanent placement of healthcare professionals, to clients throughout the United States.

15. In the course of its work, National has developed information regarding its clients, its healthcare professionals, and regarding methods and practices to conduct its business, all of which permit it to run a successful business. National treats all of this information as valuable trade secrets.

16. National's information include its methods, techniques, and practices, customer and provider information, compilations of data and processes that enable it to be successful in the competitive healthcare staffing environment. National's trade secrets are what differentiate it from other, less successful, healthcare staffing agencies.

17. National has consistently developed its confidential information over years of work and its trade secrets have economic value that arises because they are secret. This information is not available for purchase, and it would be difficult and expensive for other companies to derive independently.

18. National protects its confidential and proprietary information, *inter alia,* by requiring its employees to return its trade secret information, preventing disclosure of that information from current and former employees, and protecting its computer systems that can access that information.

19. Among other measures that National takes to ensure that protects its proprietary and confidential information, National requires its employees who have access to this information sign non-competition agreements that prohibit their use of National's information after they leave National's employment.

20. To further protect its information, National's computer systems were and are password protected and used in the operation of National's business across the United States.

21. Ascendo is a competing staffing firm that also provides employment service across the United States. As addressed below, Ascendo began expanding its healthcare practice in approximately 2020, after it hired Amy Costello, a former National employee.

22. Ascendo and Costello began a coordinated campaign to hire National employees and ex-employees either in violation of those individuals' non-competition and confidentiality agreements or in order for those employees to use their knowledge and access to National's trade secrets or both.

23. Costello and Ascendo recruited at least eleven employees or ex-employees of National. This included Individual Defendants (except Munch), as well as Heidi Sanchez, Guo-Hui Hu, Matt Johnson, Cassidy Singer, Spencer Meadows, and Jia Cartin.

24. Hiring at least eleven of National's former or current employees (including Costello) permitted Ascendo separately, and Ascendo with the

Individual Defendants to misappropriate National's trade secrets and recreate National's practices and methods.

25. Costello along with the other Individual Defendants and Ascendo acted in concert to misappropriate National's trade secrets, and proprietary and confidential practices and methods.

26. In effect, Defendants orchestrated a scheme to hire sufficient National employees or former employees with knowledge of National's proprietary information to duplicate National's healthcare business based on National's successful and profitable business practices.

27. As addressed above, Ascendo hired Costello in approximately September 2018. Costello worked with Ascendo to create/recreate Ascendo's healthcare division in the image of National's healthcare business. Ascendo has promoted Costello for participation in the scheme to take National's information and she is currently the President of Ascendo Healthcare and has been made a "Partner" at Ascendo.

28. Costello and Ascendo hired Munch who is now the Vice President for Operations at Ascendo Healthcare.

29. Ascendo and Costello hired Meadows to work for Ascendo Healthcare in or about January 2019. At National, Meadows was a Senior Accounts Manager. Now he is the National Business Development Manager at Ascendo Healthcare.

6

30. Ascendo and Costello also hired Atchachunas on or about in approximately April 2020. At Ascendo Healthcare, Atchachunas is that company's Lead Staffing Coordinator.

31. Ascendo and Costello also hired Foor in approximately October 2021. Foor was a Senior National Recruiter at National and now is a Business Development Manager at Ascendo Healthcare.

32. Ascendo and Costello also hired Benami, a recruiter at National through February 2021. Benami began working for Ascendo while his Non-Competition agreement with National prohibited him from working for a competitor of National.

33. Specifically, Benami signed a Noncompetition, Nonsolicitation and Confidentiality Agreement on August 24, 2018 that provides that he will not compete against National by directly or indirectly for himself or for others for a period of two years after his employment came to an end on or about February 13, 2021. Ex. A. , para. 3.

34. Ascendo and Costello also hired Gui-Hui Hu who was National's IT Director. Hu incorporated data into Ascendo's database systems.

35. These Individual Defendants have engaged in schemes to conceal their employment with Ascendo to prevent disclosure of their use of National's trade secrets and, in some cases, their violations of their Non-Competition agreements.

36. Ascendo, in conjunction with the Individual Defendants, also furthered their scheme by hiring away other National employees, including, in some cases, hiring National employees while they were still bound by their Non-Competition and confidentiality agreements.

37. For example, Ascendo and the Individual Defendants hired other National employees and ex-employees, including Heidi Sanchez, Gui-Hui Hu, Matt Johnson, and Spencer Meadows. In addition to Benami addressed above, at least Sanchez was hired while she was within the time periods that her Non-Competition Agreements prohibited them from working for Ascendo, a direct competitor of National.

38. The Individual Defendants used their prior relationships with these National employees to persuade them to violate their confidentiality and non-disclosure obligations.

39. As examples of how the Defendants extracted proprietary and confidential information from former National employees, Defendants hired Heidi Sanchez after she left National in August 2021. To conceal Sanchez's work in the nursing area for Ascendo, Costello suggested in a text message to Sanchez: "Well, you do pharmacy under my name and I'll do nursing under yours." Ex B.

40. Ascendo established false email addresses for Sanchez to disguise her work. For example, emails to Sanchez were forwarded from heidi@ascendohc.com and amy@ascendohc.com to hsanchez@ascendo.com in order to hide Sanchez's

8

work. Sanchez was also added to an email for Munch to give her the ability to conduct Ascendo's work without any reference to her name at all.

41. As part of the scheme, Sanchez, on Defendants behalf, changed the password to National's Google Drive Account, set her personal email address as the recover email address to the account, and transferred National's information to a personal account after she left National's employment.

42. As a further part of the scheme, Defendants sought and obtained National's trade secrets from National's employees and former employees.

43. For example, Sanchez provided Defendants with full contact lists for certain customers, and personal information regarding her contacts at customers so that Ascendo could approach those customers based on the relationship Sanchez had established at National.

44. Sanchez also provided Ascendo and the Individual Defendants information from a Google Drive where she stored National's data.

45. Ascendo and the Individual Defendants also convinced Sanchez to provide Ascendo with various lists of National's healthcare providers and to create email campaigns targeting them using that misappropriated information from National.

46. The Defendants also used the information they obtained from Sanchez to contact Nationals' customers.

47. Ascendo's, and the Individual Defendants' solicitation and use of National's information from Sanchez and using National's data were in violation

9

of Sanchez's Noncompetition, Nonsolicitation and Confidentiality Agreement (Noncompetition Agreement) that she entered into on April 17, 2014 that provided that she would not disclose and would return to National all documents and electronically stored information related to National, provided by National or acquired by her in connection with her employment with National. Ex. C, Sec. 5(a) and 6(d) The agreement also provided that for a period of two years after leaving National, Sanchez would not, directly or indirectly accept business from National's customers. *Id.*, Sec. 3.

48. On information and belief, the Defendants used other National employees, including Matt Johnson, and Spencer Meadows to obtain National's confidential information.

49. The Individual Defendants each knew that National's employees, including Benami and Sanchez had Noncompetition Agreements because the majority of the Individual Defendants had at various times their own Noncompetition Agreement with National.

50. Ascendo and the Individual Defendants coordinated their scheme to use their combined knowledge of National's methods and practices as well as the trade secrets and other confidential information they obtained from other National employees to recreate National's business for healthcare staffing.

51. Because the Defendants were able to recreate National's business for healthcare staffing, they were able to establish their business and make profits that

would not have been possible without National's trade secrets and confidential information.

## COUNT I
## TORTIOUS INTERFERENCE WITH
## BENAMI'S NONCOMPETITION AGREEMENT
*Against Ascendo, Costello, Munch, Meadows, Atcachunas, and Foor*

52. National realleges and incorporates the allegations in paragraphs 1 through 51 above as if fully set forth herein.

53. Benami had an existing contractual relationship with National after he left National's employment on or about February 13, 2021 that required Benami to, *inter alia*, not compete with National for a period of two years following his departure from National and to not use or reveal any of National's confidential business information and trade secrets.

54. Ascendo and the Individual Defendants were aware that Benami had a Noncompete, Nonsolicitation and Confidentiality Agreement.

55. Despite knowledge of the contractual restrictions on Benami, the Defendants hired Benami to work for Ascendo, a direct competitor of National.

56. During the course of working for Ascendo, Benami has breached the terms of his Noncompetition, Nonsolicitation and Confidentiality Agreement with National.

57. As a result of the Defendants' interference with Benami's agreement with National, National has suffered damages, including, but not limited to

damages to National's confidential and proprietary information the specific value of which will be determined in discovery and at trial.

WHEREFORE, National prays for an order awarding it damages and costs against Defendants and awarding such other and further relief as this Court deems fair and equitable.

## COUNT II
## TORTIOUS INTERFERENCE WITH
## SANCHEZ'S NONCOMPETITION AGREEMENT
*Against Ascendo, Costello, Munch, Meadows, Atcachunas, Foor, and Benami*

58. National realleges and incorporates the allegations in paragraphs 1 through 51 above as if fully set forth herein.

59. Sanchez had an existing contractual relationship with National after she left National's employment on or about August 25, 2021 that required Sanchez to, *inter alia*, (1) return and permit the recovery of National information and data and electronic devices, and (2) not compete with National for a period of two years following her departure from National and to not use or reveal any of National's confidential business information and trade secrets.

60. Ascendo and the Individual Defendants were aware that Sanchez had a Noncompete, Nonsolicitation and Confidentiality Agreement.

61. Despite knowledge of the contractual restrictions on Sanchez, the Defendants hired Sanchez to work for Ascendo, a direct competitor of National.

62. The Defendants sought and obtained National's information from Sanchez, including templates, contacts, National's methods and business practices

and other information although the Defendants were aware that this was in violation of Sanchez's agreement with National.

63. During the course of working for Ascendo, Sanchez has breached the terms of her Noncompetition, Nonsolicitation and Confidentiality Agreement with National.

64. As a result of the Defendants' interference with Sanchez's agreement with National, National has suffered damages, including, but not limited to damages to National's confidential and proprietary information the specific value of which will be determined in discovery and at trial.

WHEREFORE, National prays for an order awarding it damages and costs against Defendants and awarding such other and further relief as this Court deems fair and equitable.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS
Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq.*
*Against Ascendo, Costello, Munch, Meadows,
Atcachunas, Foor, and Benami*

65. National realleges and incorporates the allegations in paragraphs 1 through 51 above as if fully set forth herein.

66. National has developed information to provide employment services to healthcare entities including its methods, techniques, and practices, customer and provider information, compilations of data and processes that enable it to be successful in the competitive healthcare staffing environment.

13

67. National protects its confidential and proprietary information, *inter alia,* by requiring its employees to return its trade secret information, preventing disclosure of that information from current and former employees and protecting its computer systems that can access that information.

68. National's trade secrets are what differentiate it as a successful healthcare staffing company from unsuccessful staffing companies. National's data has economic value that arises because it is secret, and this information is difficult and expensive for other companies to derive independently.

69. Ascendo and the individual Defendants obtained copies of National's trade secrets from Sanchez and, on information and belief, from other former National employees and former employees.

70. At the time the Defendants acquired National's trade secrets, they knew or had reason to know that the information was proprietary to National and that National protected its data with contractual requirements with its current and former employees.

71. Defendants also obtained at least some of National's trade secrets from Sanchez after she left National's employment as was obligated to return National's data to it. Defendants knew or had reason to know that Sanchez no longer had authority to access any of National's data at that time.

72. As a result of the Defendants' misappropriation of National's trade secrets, National has suffered damages, including, but not limited to damages to

14

National's confidential and proprietary information the specific value of which will be determined in discovery and at trial.

WHEREFORE, National prays for an order awarding it damages, costs and attorneys' fees against Defendants and awarding such other and further relief as this Court deems fair and equitable.

## COUNT IV
## CIVIL CONSPIRACY
### *Against Ascendo, Costello, Munch, Meadows, Atcachunas, Foor, and Benami*

73. National realleges and incorporates the allegations in paragraphs 1 through 51 above as if fully set forth herein.

74. The Defendants agreed to work in concert to misappropriate National's confidential and trade secret information by, *inter alia*, obtaining that information from former National employees who were prohibited from revealing that information.

75. The Defendants did, in fact, work in concert to misappropriate National's confidential and trade secret information, including, at a minimum, obtaining copies of National's data from Sanchez and on information and belief, other ex-employees who were not permitted to share that information.

76. The Defendants used National's information to contact customers and providers and to build Ascendo's business and practices.

77. As a result of the Defendants' conspiracy to take National's trade secrets, and the taking National's trade secrets National has suffered damages,

including, but not limited to damages to National's confidential and proprietary information the specific value of which will be determined in discovery and at trial.

WHEREFORE, National prays for an order awarding it damages, costs and attorneys' fees against Defendants and awarding such other and further relief as this Court deems fair and equitable.

## COUNT V
## VIOLATION OF COMPUTER FRAUD AND ABUSE ACT
*Against Ascendo, Costello, Munch, Meadows, Atcachunas, Foor, and Benami*

78. National realleges and incorporates the allegations in paragraphs 1 through 51 above as if fully set forth herein.

79. National's information was stored on computer systems that constitute a "protected computer" as defined in 18 U.S.C. § 1030(e)(2)(B), because these systems were used and are used in and affecting interstate commerce.

80. Defendants obtained National's information by having Sanchez intentionally exceeding her authorized access when she obtained National's information from its protected computer systems. *See* 18 U.S.C. § 1030(a)(2)(C)

81. Defendants induced Sanchez to knowingly cause the transmission of a program, information, code, or command to change the password to National's Google Drive Account, set her personal email address as the recover email address to the account, and transfer the information to her personal Dropbox account after she left National's employment. All of these actions caused damage to National and

16

its protected computer systems without authorization. *See* 18 U.S.C. § 1030(a)(5)(A).

82. At the Defendants' behest knowingly and intentionally accessed National's protected computer systems without authorization and recklessly caused damage to National and its protected computer systems. *See* 18 U.S.C. § 1030(a)(5)(B).

83. Defendants knew or should have known that causing Sanchez to access National's data would cause harm or loss to National and its protected computer systems.

84. As a result of these actions, Defendants have caused damages to National that have exceeded $5,000 in economic damages during a one-year period and has compromised National's computer systems and information and forced National to take measures to restore the security, integrity and availability of the computer system and information.

WHEREFORE, National prays for an order awarding it (a) actual damage; (b) any profits Defendants gained by violating the Computer Fraud and Abuse Act; (c) injunctive and other equitable relief to prevent future violations; (d) an order requiring Defendants return National's information; (e) National's reasonable attorneys' fees and litigation costs; and (f) such further and additional relief as the Court deems fair and reasonable.

## COUNT VIII
## VIOLATION OF FLORIDA COMPUTER ABUSE AND DATA RECOVERY ACT ("CADRA")
### *Against Ascendo,* Costello, *Munch, Meadows,* *Atcachunas, Foor, and Benami*

85. National realleges and incorporates the allegations in paragraphs 1 through 51 above as if fully set forth herein.

86. National's information was stored on computer systems that constitute a "protected computer" as defined by CADRA, Fla. Stat. § 688.802(6), because these systems were used in connection with the operation of National's business and stored information, programs, or code in connection with the operation of National's business that could be accessed only through a technological access barrier, as defined by CADRA, Fla. Stat. § 668.802(7).

87. On behalf of the Defendants, Sanchez knowingly and with intent to cause harm or loss, obtained information from National's protected computer systems without authorization and, as a result, caused harm or loss to National. *See* Fla. Stat. § 668.803(1).

88. Also, on behalf of the Defendants, Sanchez knowingly and with the intent to cause harm or loss caused the transmission of a program, code, or command to National's protected computer systems without authorization and, as a result, caused harm or loss to National. Fla. Stat. § 668.803(2).

89. Defendants and Sanchez committed the acts set forth herein knowingly and with the intent to cause loss as defined in CADRA, Florida Statutes § 668.802(5).

90. National has been damaged by Defendants and Sanchez's violations of CADRA, and is entitled to recover damages, any profits Defendants gained as a result of their violations, to injunctive and equitable relief to prevent future violations of CADRA, and to recover all copies of Nationals' information. Fla. Stat. Fla. Stat. § 668.804(1).

91. National has incurred reasonable attorneys' fees and costs incident to bringing this action. Pursuant to Fla. Stat. § 668.804(2), Defendants are required to reimburse National for its reasonable attorneys' fees incurred as a result of their violations of CADRA.

WHEREFORE, National prays for an order awarding it (a) actual damages pursuant to Fla. Stat. § 668.804(1)(a); (b) any profits gained from violating CADRA, Fla. Stat. § 668.804(1)(b), (c) injunctive and equitable relief to prevent future violations, Fla. Stat. § 668.804(1)(c); (d) an order requiring Defendants to return all copies of National's information, Fla. Stat. § 668.804(1)(d); (e) National's reasonable attorneys' fees and other costs, Fla. Stat. § 668.804(2); and (f) such additional relief as this Court deems fair and equitable.

## **JURY TRIAL DEMANDED**

National hereby demands a jury trial on all issues so triable.

Dated: August 11, 2023.

                                                    Respectfully Submitted,

                                                    */s/ George Coe*
                                                    **George Coe, Esq.**
                                                    Florida Bar No. 298440

Primary: gcoe@losey.law
Secondary: docketing@losey.law
**Losey PLLC**
1420 Edgewater Dr.
Orlando, FL 32804
Telephone: (407) 346-6574
*Counsel for Plaintiff*