UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NATIONAL STAFFING
SOLUTIONS, INC.,

      Plaintiff,

vs.                                    CASE NO.:  6:23-cv-01542-CEM-RMN

ASCENDO RESOURCES, LLC,
AMY COSTELLO, KRISTOFER
MUNCH, STEVEN MEADOWS,
JACLYN ATCACHUNAS,
MICHAEL FOOR and BENJAMIN
BENAMI,

      Defendants.
_____/

**DEFENDANTS ASCENDO RESOURCES, LLC AND STEVEN
MEADOWS' MOTION FOR RULE 11 SANCTIONS
AND MEMORANDUM OF LAW IN SUPPORT**

      Defendants, Ascendo Resources, LLC and Steven Meadows (hereinafter collectively "Defendants"), submit the following Motion for Rule 11 Sanctions because Plaintiff National Staffing Solutions Inc. refused to dismiss its claims against Defendants for which it lacks evidentiary support within 21 days after Defendants' request that it do so. *See* Fed. R. Civ. P. 11(c)(2); Ex. A (Notice of Motion for Sanctions).

## INTRODUCTION

Defendants bring this Motion because Plaintiff has persisted in prosecuting baseless claims against Defendants despite no evidentiary support and having no damages.

Given that Plaintiff had good reason to know its allegations against the Defendants were baseless at the outset, and given that no evidentiary support for those claims has surfaced after 18 months of discovery, and with discovery having now closed, it was objectively unreasonable for Plaintiff and its counsel to prosecute and maintain such claims.

Because Plaintiff has refused to take necessary corrective measures regarding these unfounded claims, Defendants now seek appropriate relief from the Court.

## STANDARD

Rule 11 serves a purpose fundamental to the fair and proper functioning of our federal civil litigation system: "to deter baseless filings in the district court" that are prejudicial and waste the court's and the parties' time and resources. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Accordingly, anyone who files a "pleading, written motion, or other paper" is duty-bound to ensure that its factual contentions are grounded in evidentiary support or will have such support "after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3); *see also Massengale v. Ray*, 267 F.3d 1298, 1301-02 (11th Cir. 2001).That

means a party and its counsel may be sanctioned "for insisting upon a position after it is no longer tenable," since "if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention." Fed. R. Civ. P. Notes of Advisory Cmte.—1993 Amend.; *see also Gulisano v. Burlington, Inc*., 34 F.4th 935, 942 (11th Cir. 2022) ("[A]n attorney's obligations with respect to the contents of pleadings or motions are not measured solely as of the time when the pleading or motion is initially filed with the court, but also at the time when the attorney, having learned the claims lack merit, reaffirms them to the court.").

Violations of this basic requirement are sanctionable based on an objective standard of reasonableness. *See, e.g., Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1091 (11th Cir. 1994). Applying these standards, the Court should grant Defendants' Motion.

## ARGUMENT

Plaintiff's Amended Complaint contains core allegations which had no evidentiary basis at the time they were filed and still do not now, after years of "further investigation [and] discovery." *See* Fed. R. Civ. P. 11(b)(3). It was unreasonable for Plaintiff and its counsel to file, and subsequently continue to maintain, such "objectively frivolous" claims, while wasting Defendants' time and resources defending against them. *See NCM of Collier Cnty., Inc*., 2012 WL

3

2792802, at *1-3 (granting Rule 11 motion where "Plaintiffs did not amend their complaint, or rethink the legal sufficiency of their claims" that were "objectively frivolous").

## I. The Tortious Interference with Benami's Noncompetition Agreement Claim is Without Merit (Count I).

Plaintiff alleges that the Defendants "induced and encouraged Benami to provide National's confidential information to the other Defendants, thereby violating the terms of his Noncompetition Agreement." [D.E. 43 (hereinafter "Am. Compl.") at ¶ 73]. Plaintiff also claims that during his time with Ascendo, Benami breached the terms of his "Noncompetition" agreement with National. *Id.* at ¶ 74. Finally, Plaintiff alleges that as a result of this interference, it has been damaged. *Id.* at ¶ 75.

However, in response to requests for production seeking documentation supporting these allegations against the Defendants, Plaintiff responded: "At this time, National is not aware of any documents responsive to this request." *See* Plaintiff's Amended Response to Defendants' First Request for Production ("Plaintiff's Responses"), at Nos. 119-120.[1]

And, despite these allegations in the Amended Complaint, Plaintiff's corporate representative testified that it does <u>not</u> contend that any of the Defendants

---

[1] This document was previously filed in support of Defendants' Motion for Summary Judgment [D.E. 138] as Exhibit G [D.E. 138-7].

4

interfered with Mr. Benami's agreement with National. See Deposition Transcript of Jon Skepko as Plaintiff's corporate representative, hereinafter "Skepko Dep.", at 203:18-25.[2] Further, Plaintiff's corporate representative testified that the breach of Mr. Benami's "Noncompetition" agreement occurred when Mr. Benami went to work for a competitor – Ascendo. *Id.* at 205:9-21. Yet, Plaintiff's corporate representative admitted that the agreement did not actually state that Mr. Benami could <u>not</u> work for a competitor. *Id.* Plaintiff's representative also testified that Plaintiff does not contend that Mr. Benami provided any of National's confidential information to the Defendants. *Id.* at 205:24-206:2. Finally, Plaintiff's representative admitted that Plaintiff is not claiming to be damaged as a result of the alleged tortious interference with National's agreement with Mr. Benami. *Id.* at 206:3-11.

As is clear from the deposition testimony of Plaintiff's corporate representative, the claims asserted in Count I against the Defendants are without merit and frivolous.

### II. The Tortious Interference with Sanchez's Noncompetition Agreement Claim (Count II).

Plaintiff alleges that the Defendants "induced and encouraged Sanchez to provide National's confidential information to the other Defendants and seek to hire

---

[2] This document was previously filed under seal in support of Defendants' Motion for Summary Judgment [D.E. 138] as Exhibit A [D.E. 151].

5

other National and ex-National employees on behalf of Ascendo, thereby violating the terms of his Noncompetition Agreement." Am. Compl., ¶ 79.

In response to requests for production seeking support for these claims, Plaintiff stated that it was "not aware of any documents responsive to this request." *See* Plaintiff's Responses, Nos. 127-129. Thus, the claims in Count II asserted against the Defendants are without merit and frivolous.

### III. The Misappropriation of Trade Secrets Claim (Count III)

Plaintiff alleges that the Defendants "obtained copies of National's trade secrets from Sanchez and, on information and belief, from other former National employees and former employees." Am. Compl. ¶ 87.

In discovery, when asked to identify the "trade secrets" allegedly misappropriated, Plaintiff referenced a Provider Timecard, client contact lists and email templates allegedly shared by Heidi Sanchez with one or more employees at Ascendo. *See* Plaintiff's Responses, Nos.133-136. As for the other National employees, other than Sanchez, Plaintiff indicated it had no documents supporting the allegation that Defendants obtained trade secrets from any other National employees. *Id.* at Nos. 143-152.

For the Provider Timecard, Plaintiff's corporate representative testified that National has not been damaged by the use of that time card. *See* Skepko Dep. at 244:23-245:3. And, Plaintiff's current president, Chanin Griffin testified that the

6

timecard was not a trade secret because "everyone has time cards." See Deposition Transcript of Chanin Griffin at 71:7-16.[3]

For the client contact lists, Plaintiff's representative testified that it does not contend that any client lists were provided to Defendants from any source other than Sanchez. *See* Skepko Dep. 133:14-17. As for the client lists provided by Sanchez, Plaintiff identified two. *Id.* at 133:18-21. The two lists were from Encompass Healthcare and Saber Healthcare. *Id.* at 134:21-25.

Plaintiff's representative testified that the Encompass Healthcare list was <u>not</u> created by National but likely originated from Encompass. *Id.* at 141:4-16. And, Plaintiff's representative testified that it was not aware of Encompass telling National to keep that list confidential. *Id.* at 143:3-16. Further, Plaintiff's representative testified that National does not know whether it has even been damaged by the transmission of that list. *Id.* at 158:18-22. In fact, Plaintiff's representative testified that National's contention was that it lost clients because Heidi Sanchez stopped working for National, not because of the transmission of the Encompass list. *Id.* at 159:14-18.

---

[3] This document was previously filed under seal in support of Defendants' Motion for Summary Judgment [D.E. 138] as Exhibit H [D.E. 151].

As for the Saber Healthcare list, Plaintiff could not identify who created it but assumed it was Heidi Sanchez. *See* Skepko Dep. at 151:22-152:6; 153:1-13. The information provided would have been from Saber. *Id.* at 153:20-154:19.

As for the email templates, those concern several "mail merge" templates that were emailed between Sanchez and Meadows. *Id.* at 245:11-25. Plaintiff claims these templates are trade secrets because Sanchez created them while working for National. *Id.* at 246:1-10. But, Plaintiff's representative could not state whether the templates emailed between Sanchez and Meadows were exactly the same as the templates created by Sanchez while at National. *Id.* at 246:17-247:18. He also agreed that someone else could have written those templates. *Id.* at 248:4-6. The representative also testified that National does not know if it has been damaged through use of templates. *Id.* at 249:13-15.

Further, as to the trade secrets at issue, other than alleged metadata for the timecard, National has no documentation supporting the notion that these documents were prepared or created by National. *See* Plaintiff's Response to Ascendo's Fourth Request for Production, attached as **Exhibit A**.

Finally, National's expert has made no conclusions in this case regarding the amount of damages National allegedly incurred as a result of Defendants' alleged

misappropriation. *See* Deposition Transcript of Lisl Unterholzner, hereinafter "Unterholzner Dep.", at 62:20-63:11, 81:25-82:25.[4]

As is clear from the deposition testimony of Plaintiff's corporate representative and expert, the claims asserted in Count III against the Defendants are without merit and frivolous.

### IV. Violations of the Computer Fraud and Abuse Act (CFAA) (Count IV) and Florida Computer Abuse and Data Recovery Act (CADRA) (Count V)

Plaintiff alleges that "Defendants obtained National's information by having Sanchez intentionally exceed her authorized access when she obtained National's information from its protected computer systems." Am. Compl., ¶ 93; *see also* ¶ 100. Plaintiff also claims that Defendants "induced" Sanchez to take several acts regarding a Google Drive account and that the conduct of Sanchez was at the "behest" of Defendants. *Id.* at ¶¶ 94, 95.

In response to discovery requests seeking documents supporting these allegations, Plaintiff responded that it was "not aware of any documents responsive to this request." *See* Plaintiff's Responses, Nos. 156-165, 167-171, 173-182.

Further, Plaintiff's representative testified that he does not know when Sanchez copied the data, but it was downloaded *prior to* her termination. *See* Skepko

---

[4] This document was previously filed under seal in support of Defendants' Motion for Summary Judgment [D.E. 138] as Exhibit G [D.E. 151].

9

Dep. at 185:24-25; 189:16-17. And, he testified that as far as National knows, the National documents at issue were copied when Sanchez was an employee of National. *Id.* at 186:17-21. Additionally, when Sanchez worked at National she had access to everything of National's. *Id.* at 42:8-14. In fact, Plaintiff has been aware since the deposition of Heidi Sanchez taken on March 1, 2022, by National in the separate lawsuit it brought against Sanchez that any access Sanchez had to any of National's computer systems was authorized by National. *See* Deposition Transcript of Heidi Sanchez, Vol. II, at 219:3-8.[5]

As such, there is no evidence that Sanchez's alleged acts of copying the National documents were "without authorization," much less that Defendants "induced" Sanchez to take those acts or that they were done at Defendants' behest. *Id.* at 190:19-22.

Plaintiff further alleges: "Defendants induced Sanchez to knowingly cause the transmission of a program, information, code, or command to change the password to National's Google Drive Account, set her personal email address as the recover email address to the account, and transfer the information to her personal Dropbox account after she left National's employment." Am. Compl., ¶ 94. Yet, Plaintiff's representative testified that National does not actually have evidence that the

---

[5] This document was previously filed in support of Defendants' Motion for Summary Judgment [D.E. 138] as Exhibit O [D.E. 138-15].

Defendants induced Sanchez to download or transmit National's data. *See* Skepko Dep. at 189:10-190:1. He further testified that National does not contend the Defendants commanded Sanchez to change the password on National's Google Drive Account and National has no information that any of the Defendants commanded Sanchez to set her personal email account as the recovery account or transfer information to her personal Dropbox account. *Id.* at 190:2-190:18.

Finally, National's expert has made no conclusions in this case regarding the amount of damages National allegedly incurred as a result of Defendants' alleged violations of the CFAA or CADRA. *See* Unterholzner Dep., at 82:18-25.

The claims asserted against Defendants in Count IV and V are without merit and frivolous.

\* \* \*

There can be little question that Plaintiff acted unreasonably in filing and prosecuting claims based on speculative belief of malfeasance without any evidence. "[E]ven the most minimal investigation would have alerted" Plaintiff and its counsel that these claims were utterly baseless. *See Gulisano*, 34 F.4th at 16 (quoting *Worldwide Primates, Inv. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)). As Plaintiff's responses to discovery throughout this case have demonstrated, it never had any evidence supporting these claims against the Defendants.

There is no documentary or testimonial evidence supporting Plaintiff's claims against the Defendants for the asserted counts. Plaintiff's claims, based on pure speculation, lacked merit from inception, and there is no evidence to support them now and the deadline for discovery has passed. Plaintiff should not be permitted to pursue them any further. As the Eleventh Circuit repeatedly has held, "[t]hat the contentions in the complaint were not frivolous at the time it was filed does not prevent the district court from sanctioning [the attorney] for his continued advocacy of them after it should have been clear that those contentions were no longer tenable." *Gulisano*, 34 F.4th at 942-43 (affirming sanctions); see also, e.g., *Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1422 (11th Cir. 1996) (affirming sanctions when plaintiff's counsel knew at the time of filing, at a pretrial conference, and after depositions "that the case was without a factual basis but failed to dismiss it, thereby forcing [defendant] (and the court) to expend time and money on a summary judgment motion"); *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1091-93 (11th Cir. 1994) (affirming Rule 11 sanctions where "[t]he evidence shows [plaintiff] knew from the beginning that the letters had not harmed its business relationship with Delta" and plaintiff pursued the claim "when it knew, or should have known, that its claim was legally and factually baseless").

Here, by filing and pressing baseless claims, Plaintiff has harmed and prejudiced Defendants, including by forcing them to needlessly and unfairly expend

12

considerable time and resources defending against such baseless claims. Sanctions are necessary and appropriate to redress Plaintiff's and its attorneys' misconduct. *See Turner*, 91 F.3d at 1422.

## CONCLUSION

Because Plaintiff has refused to voluntarily withdraw its claims asserted against Defendants in Counts I, III, IV and V, the Court should grant this Motion, dismiss with prejudice Plaintiff's claims against Defendants in Counts I, III, IV, and V, and award Defendants appropriate sanctions against Plaintiff and its counsel for advancing and persisting in maintaining claims for which it has no evidentiary support.

The Court should further award Defendants its reasonable expenses including costs and attorneys' fees, incurred to prosecute this Motion and otherwise to defend against Plaintiff's unsupported claims referred to in this Motion. Fed. R. Civ. P. 11(c)(2).

## CERTIFICATE OF GOOD FAITH CONFERRAL

Pursuant to Local Rule 3.01(g), Sara Kallop, counsel for Defendants Ascendo Resources LLC, and Steven Meadows, conferred with Plaintiff's Counsel regarding the filing of this motion by serving this motion at least 21 days prior to filing, in conformity with the procedure set forth in Fed. R. Civ. P. 11. Ms. Kallop also corresponded by letter emailed to Plaintiff's counsel to confer on the issues raised

in the motion. To date, within the statutory safe harbor timeframe, the claims have not been dismissed.

          Respectfully submitted,

          / s / Lan Kennedy-Davis
          LAN KENNEDY-DAVIS
          Florida Bar No.: 534021
          E-mail: lkennedy@rumberger.com
          SUZANNE BARTO HILL
          Florida Bar No.: 0846694
          E-mail: shill@rumberger.com
          SAMANTHA C. DUKE
          Florida Bar No.: 0091403
          E-mail: sduke@rumberger.com
          SARA LEWIS KALLOP
          Florida Bar No.: 1018619
          E-mail: skallop@rumberger.com
          RUMBERGER, KIRK & CALDWELL, P.A.
          300 South Orange Avenue, Suite 1400
          Orlando, Florida 32801
          Tel: 407.872.7300 / Fax: 407.841.2133
          *Attorneys for Defendants, Ascendo Resources, LLC, Steve Meadows, Jaclyn Atachunas, Michael Foor and Benjamin Benami*

## CERTIFICATE OF SERVICE

I FURTHER CERTIFY that on July 21, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing via email to all counsel of record.

          / s / Lan Kennedy-Davis
          LAN KENNEDY-DAVIS
          Florida Bar No.: 534021
          E-mail: lkennedy@rumberger.com

SUZANNE BARTO HILL
Florida Bar No.: 0846694
E-mail: shill@rumberger.com
SAMANTHA C. DUKE
Florida Bar No.: 0091403
E-mail: sduke@rumberger.com
SARA LEWIS KALLOP
Florida Bar No.: 1018619
E-mail: skallop@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 South Orange Avenue, Suite 1400
Orlando, Florida 32801
Tel: 407.872.7300 / Fax: 407.841.2133
*Attorneys for Defendants, Ascendo Resources, LLC, Steve Meadows, Jaclyn Atachunas, Michael Foor and Benjamin Benami*

15