UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NATIONAL STAFFING SOLUTIONS,
INC., a Florida corporation,
    Plaintiff,

v.                                        Case No. 6:23-cv-01542-CEM-LHP

ASCENDO RESOURCES, LLC, et al.
    Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO EXCLUDE AS EVIDENCE THE EXPERT REPORT AND OPINIONS OF LISL UNTERHOLZNER AND PRECLUDE HER TESTIMONY AT TRIAL (DOC. 137)**

Plaintiff, NATIONAL STAFFING SOLUTIONS, INC. ("National"), by and through undersigned counsel, respectfully files this Response in Opposition to Defendants' Joint Motion to Exclude as Evidence the Expert Report and Opinions of Lisl Unterholzner and Preclude Her Testimony at Trial (Doc. 137), and states as follows:

## I. INTRODUCTION

Defendants seek to exclude the expert report and testimony of Lisl Unterholzner, CPA/ABV, CFE ("Ms. Unterholzner"), National's retained damages expert. Notably, Defendants do not challenge Ms. Unterholzner's experience or qualifications. Rather, Defendants primarily argue that Ms. Unterholzner's opinions are unreliable because they are not based on sufficient facts or data and are not the product of reliable principles and methods reliably applied to the facts.

However, Defendants fail to acknowledge that a large portion of the data that Ms. Unterholzner sought to consider was denied by Defendants' discovery shenanigans, spoliation, and refusal to produce relevant financial information that is the subject of multiple, pending filings. *See* Docs. 127, 145, 146, and 147. Defendants cannot deny the production of relevant documents and testimony and then claim the lack of evidence warrants the exclusion and disqualification of Plaintiff's expert.

Defendants further contend that her testimony will not be helpful to the fact-finder and will cause confusion. As set forth below, Defendants mischaracterize Ms. Unterholzner's testimony and report, and their arguments lack merit. Ms. Unterholzner's expert opinions are well-founded, based on sufficient data, and employ reliable methodologies that will assist the trier of fact in understanding the economic damages in this complex case.

## II. BACKGROUND OF MS. UNTERHOLZNER'S ROLE AND OPINIONS

Ms. Unterholzner was retained by National to provide expert opinions on the economic damages allegedly suffered by National as a result of Defendants' tortious interference, misappropriation of trade secrets, and other misconduct. Her report highlights a significant decline in National's annual revenue following the alleged bad acts by Defendants in 2022, specifically noting a $52 million decrease from 2022 to 2023 and a $14 million decrease from 2023 to 2024. She concluded that this downturn correlates with the timing of the Defendants' alleged actions and that National has lost more than $60 million in revenue as potential

damages.

Crucially, Ms. Unterholzner's report clearly states that her conclusions are made assuming a finding of liability by the trier-of-fact. This is a critical distinction that Defendants conveniently overlook or misrepresent throughout their motion. Her role is to quantify the economic impact of the alleged wrongful conduct, not to determine liability or causation, which is the province of the jury.

### III. ARGUMENT

The district court has "broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." *Evans v. Mathis Funeral Home*, 996 F.2d 266, 268 (11th Cir. 1993). Federal Rule of Evidence 702 governs the admission of expert testimony, as explained and refined by the United States Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 582, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).

To fulfill its obligation under *Daubert*, a trial court engages in a three-part inquiry: (1) whether the expert is qualified to testify competently; (2) whether the methodology used to reach the conclusions is sufficiently reliable; and (3) whether the testimony assists the trier of fact to understand the evidence or to determine a fact at issue. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005).

Here, Defendants do not challenge the first prong of this test. But instead, Defendants' motion to exclude Ms. Unterholzner's testimony is based on a

misinterpretation of her role as an economic damages expert and an attempt to shift the burden of proof for causation onto the expert rather than the fact-finder. Ms. Unterholzner was not retained to opine on whether Defendants caused the harm alleged; rather, she testified to the amount of damages caused if the Defendants are found to be liable.

Defendants attack a supposed lack of facts or data supporting Ms. Unterholzner's opinion but ignore that it is their own refusal to participate in discovery, produce documents, testify on financial matters, and outright destruction of evidence that has created this data gap. This Court has expressly rejected the idea that a party can disqualify an opposing damages expert for lack of evidence when the objecting party has refused to produce the very evidence they complain is lacking. *Allstate Ins. Co. v. Auto Glass Am., LLC*, No. 6:18-cv-2184-CEM-LRH, 2021 WL 12313672, 2021 U.S. Dist. LEXIS 273252, at *22 (M.D. Fla. Aug. 19, 2021).

Despite this, Defendants apparently expected a different report and opinion, but that does not render Ms. Unterholzner's opinions inadmissible. A less-than-perfect expert opinion may still be admitted, even if it contains gaps. *See In re Trasylol Prods. Liab. Litig.*, No. 08-MD-01928, 2010 U.S. Dist. LEXIS 142228, 2010 WL 1489793, at *6 (S.D. Fla. Feb. 24, 2010) ("Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded."). Furthermore, courts "must be careful not to conflate questions of admissibility of expert testimony with the weight appropriately to be

4

accorded to such testimony by the fact finder." *Id.* at *7 (quoting *Quiet Tech DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F. 3d 1333, 1341 (11th Cir. 2003)). Here, Ms. Unterholzner's opinions and testimony would assist the trier of fact in determining the amount of damages once liability has been determined.

Finally, "[t]he qualification standard for expert testimony is 'not stringent,' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility.'" *Willis v. Wells Fargo Bank, N.A.*, 669 F. Supp. 3d 1252, 1256 (S.D. Fla. Apr. 18, 2023) (quoting *Kilpatrick v. Breg, Inc.*, 2009 U.S. Dist. LEXIS 76128, 2009 WL 2058384, at *3 (S.D. Fla. June 25, 2009) (quoting *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 585 (N.D. Fla. 2009)). Defendants' criticisms of Ms. Unterholzner's methodology and opinion may form the basis for "[v]igorous cross-examination [and] presentation of contrary evidence" at trial but are not grounds to exclude her entirely. *See Maiz v. Virani*, 253 F.3d 641, 666 11th Cir. 2001); *see also Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011).

**A.   Ms. Unterholzner's Opinions are Reliable and Based on Sufficient Facts and Data.**

Defendants incorrectly assert that Ms. Unterholzner's opinions are unreliable due to insufficient facts or data. They argue she "merely assumed facts to be true" and "failed to conduct a sufficiently thorough investigation." "Any claimed weakness in the factual basis for [an expert's] conclusion in this regard goes at best to weight and credibility[.]" *Ostroski v. United States*, No. 06-80327-

CIV, 2007 WL 9701868, 2007 U.S. Dist. LEXIS 105096, at *5-6 (S.D. Fla. Aug. 22, 2007).

Again, any lack of facts or data is solely attributable to Defendants' withholding or destruction of that data, which cannot form the basis for disqualifying Ms. Unterholzner. In *Allstate*, this Court refused to disqualify an expert on damages even though the expert "was unable to provide an exact dollar figure for the net profit calculation because the relevant financial information is in the exclusive control of the defendants, not [plaintiff], and [defendant] has refused to produce that information[.]" 2021 U.S. Dist. LEXIS 273252, at *22 (internal quotations and citations omitted). Defendants make the exact same argument here and it must again be denied. If Defendants "question the data utilized in [Ms. Unterholzner's] calculations, that is an issue for cross examination." *Id*.

And, in any event, Defendants improperly scope Ms. Unterholzner's opinions and believe that she must justify the liability before calculating damages. This argument fails to acknowledge that assumptions regarding liability are permissible and standard practice.

Defendants heavily criticize Ms. Unterholzner for basing her opinion on the assumption that the trier of fact would find sufficient evidence of liability. However, it is well-established that an expert witness, particularly in the field of damages, can properly rely on assumed facts when those facts are subject to proof at trial. *See* Fed. R. Evid. 703 (permitting an expert to base an opinion on facts or data that the expert has been made aware of or personally observed).

Defendants claim Ms. Unterholzner's reliance on Plaintiff's counsel's view of the case is unreliable. However, experts often rely on information provided by counsel, especially when direct access to certain data is limited or withheld by opposing parties. Ms. Unterholzner explicitly states that her analysis is based on "the bad acts identified in the Amended Complaint and written discovery materials." Her report details the information considered, including the Amended Complaint, various responses to requests for production and interrogatories from Defendants, and National's financial records. Thus, the documents reviewed by Ms. Unterholzner are plainly relevant and appropriate for an expert in her field.

Further, Ms. Unterholzner's report specifically notes that Defendants' objections and non-production of relevant financial information have limited her ability to quantify lost profits or unjust enrichment more precisely. Expert testimony should not be excluded when it is "tied directly to the limited evidence [the expert] had available to them." *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 285 (S.D.N.Y. 2011). It is disingenuous for Defendants to now criticize her for not having information they refused to provide.

Here, Ms. Unterholzner, as an economic damages expert, is not tasked with determining liability; that is for the jury. Her role is to help the jury quantify the financial impact if liability is found. In performing her analysis, Ms. Unterholzner relied on National's own data to quantify National's damages and explain how she analyzed the information. To expect an economic expert to prove the underlying

tortious acts or misappropriation is to misunderstand the distinct roles of liability and damages experts. For these reasons, Defendants' Motion must be denied.

**B.    Ms. Unterholzner's Opinions Employ Reliable Principles and Methods.**

Defendants argue that "there is no discernable methodology underlying Unterholzner's opinions other than her own general references to her assumptions and what she believes is reasonable." Doc. 137, at 11. This assertion misrepresents her approach.

Ms. Unterholzner's methodology begins with observing a "year over year decline in National Staffing's annual revenue following the bad acts identified in the Amended Complaint." Doc. 137-1, at 6. This observation of correlation, coupled with the assumption of liability, forms the basis for her damages calculation. The chart provided in her report visually demonstrates this correlation, showing a significant revenue decrease in the periods following the alleged bad acts.

Her calculation of over $60 million in "potential damages, after consideration of the incremental costs that would be associated with National Staffing's lost revenue" (Doc. 137-1, at 9), reflects a standard approach to lost profit calculations in economic damages. The fact that she did not perform a "claim by claim or a count by count analysis" is appropriate for an overall assessment of National's damages, as the total economic harm to National is the overarching concern, regardless of the specific legal theory under which it is ultimately proven.

Additionally, Defendants contend that Ms. Unterholzner failed to consider

8

alternative factors for the decline in revenue, such as industry trends or the COVID-19 pandemic. However, even if an accurate portrayal of Ms. Unterholzner's testimony (which, National disputes), this would only go to the weight of the opinion, not its admissibility. *Quiet Tech DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F. 3d 1333, 1346 (11th Cir. 2003) ("Normally, failure to include variables will affect the analysis' probativeness, not its admissibility.").

Rather than disqualifying Ms. Unterholzner, such criticisms are better addressed via cross-examination. Indeed, the very purpose of cross-examination is to attack alleged shortcomings. *See id.* at 1345 (finding that flaws based on the use of wrong numbers and flaws "of a character that impugn the accuracy of [the] results, not the general scientific validity of [the] methods" are "precisely the role of cross-examination"); *see also Cummings v. Standard Register Co.*, 265 F.3d 56, 65 (1st Cir. 2001) ("[W]hatever shortcomings existed in [the expert's] calculations went to the weight, not the admissibility, of the testimony.").

In any event, Ms. Unterholzner's testimony indicates she acknowledged these factors. Her primary task is to quantify the damages assuming the Defendants' actions were a cause. Furthermore, her report is an assessment, and the ability to definitively separate impacts becomes more feasible once a causal link is established by the trier of fact. It is unreasonable to demand an expert conclusively apportion damages to specific causes when the causation itself is a disputed fact for the jury.

In this same vein, Defendants repeatedly point to Ms. Unterholzner's

9

deposition testimony where she stated that determining causation is "ultimately a conclusion for the trier of fact." Doc. 137, at 12 n.1. This statement, far from undermining her expertise, demonstrates a proper understanding of the division of labor between an expert witness and the jury. An expert provides specialized knowledge to assist the trier of fact, not to replace it. Her role is to quantify the financial impact if the jury finds liability, not to make the liability determination herself. On these grounds, Defendants' Motion fails and must be denied.

**C.     Ms. Unterholzner's Testimony is Relevant and Will Be Helpful to the Trier of Fact.**

Defendants contend that Ms. Unterholzner's testimony will confuse the jury and offers "nothing more than what National's lawyers can argue at closing argument." This argument mischaracterizes the helpfulness standard of Rule 702.

Ms. Unterholzner is a Certified Public Accountant, accredited in Business Valuation, and a Certified Fraud Examiner. Her experience includes forensic accounting investigations, business valuations, and the analysis of economic damages. This specialized knowledge and expertise are precisely what will help the trier of fact understand complex financial data and determine a fact in issue—the amount of damages suffered by National. The financial decline and the calculation of lost revenue are not matters within the common knowledge of a lay jury, thus necessitating expert testimony, which will be helpful. *See Diamond Resorts Int'l, Inc. v. Aaronson*, Case No. 6:17-cv-1394-Orl-37DCI, 2019 WL 8301669, 2019 U.S. Dist. LEXIS 229808, at *4 (M.D. Fla. Feb. 4, 2019) (finding helpfulness to be "the

testimony will help the jury to 'understand the evidence or to determine a fact in issue' (Fed. R. Evid. Rule 702(a))").

The alleged "contradictions" in her testimony, where she acknowledges she is not definitively opining on the exact $60 million as caused by Defendants but rather as potential damages, are not contradictions but instead provide a clear articulation of the scope of her expert opinion. She is quantifying the economic loss sustained by National, which the jury can consider if they determine Defendants' actions caused that loss. Her testimony differentiates the *quantum* of damages from the *causation* of damages.

Even if Ms. Unterholzner does not offer a specific, itemized calculation for each alleged violation or individual defendant, her overall assessment of lost revenue provides a necessary foundation for the jury to consider the scale of potential damages. The level of specificity can be further explored through cross-examination, but the lack of granular breakdown at this stage does not render her entire testimony inadmissible. Accordingly, Defendants' Motion must be denied.

## IV. CONCLUSION

Defendants' arguments to exclude Ms. Unterholzner's expert report and testimony are an attempt to improperly conflate the roles of the expert and the jury. Ms. Unterholzner, as a qualified expert in economic damages, has based her opinions on sufficient facts and data available to her, and has employed reliable principles and methods in observing the financial impact on National. Her explicit assumption of liability by the trier of fact is a proper framework for an economic

damages expert. Her testimony will provide valuable specialized knowledge to assist the jury in understanding the complex financial aspects of this case and determining a crucial fact in issue—the economic damages suffered by National.

For the foregoing reasons, Plaintiff National Staffing Solutions, Inc. respectfully requests that this Honorable Court deny Defendants' Joint Motion to Exclude as Evidence the Expert Report and Opinions of Lisl Unterholzner and Preclude Her Testimony at Trial.

Dated: July 22, 2025.

**s/ Scott A. Richards**
**Scott A. Richards, Esq.**
Florida Bar No. 72657
Primary: srichards@losey.law
Secondary: docketing@losey.law
**Losey PLLC**
1420 Edgewater Dr.
Orlando, FL 32804
Telephone: (407) 906-7389
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was filed with the Clerk of Court this 22nd day of July 2025, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

**s/ Scott A. Richards**
**Scott A. Richards, Esq.**
Florida Bar No. 72657
