UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NATIONAL STAFFING
SOLUTIONS, INC.,

      Plaintiff,

vs.                                          CASE NO.: 6:23-cv-01542-CEM-RMN

ASCENDO RESOURCES, LLC,
AMY COSTELLO, KRISTOFER
MUNCH, STEVEN MEADOWS,
JACLYN ATCACHUNAS,
MICHAEL FOOR and BENJAMIN
BENAMI,

      Defendants.
_____/

**DEFENDANTS ASCENDO RESOURCES LLC, STEVEN MEADOWS, JACYLYN ATCACHUNAS, BENJAMIN BENAMI, AND MICHAEL FOOR'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [D.E. 135]**

      Defendants, Ascendo Resources LLC ("Ascendo"), Steven Meadows, Jacylyn Atcachunas, Benjamin Benami and Michael Foor (collectively "Defendants"), hereby respond in opposition to the Motion for Partial Summary Judgment ("Motion") filed by Plaintiff National Staffing Solutions, Inc. ("Plaintiff" or "National"). Plaintiff's Motion should be denied because it is unsupported by the undisputed material facts and because it relies upon inapplicable legal standards to advance its cause. Thus, Defendants respectfully request this Court deny the Motion.

## I. INTRODUCTION

Since the filing of its Motion, National has filed a Motion for Order of Partial Dismissal seeking to dismiss Defendants Jacylyn Atcachunas, Benjamin Benami ("Benami") and Michael Foor from this action as well as Counts IV and V of Plaintiff's Amended Complaint with prejudice. [D.E. 155] Accordingly, to the extent National's Motion is asserted against Atcachunas, Benami and Foor, it should be denied. Likewise, any argument directed at Counts IV and V should also be denied.

National repeatedly attempts to spin the facts through misrepresentation and omission in an attempt to present them to the Court as undisputed facts in support of its Motion. However, the undisputed material facts establish that Benami and Heidi Sanchez ("Sanchez") were not prohibited from working for Ascendo by their respective agreements with National. Accordingly, they did not breach their agreements with National by working for Ascendo, and National's claims for tortious interference based on these purported breaches fail. For these reasons, National's Motion should be denied.

## II. RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

National incorrectly claims the following as an undisputed material fact: "Ascendo had a pattern and practice of hiring former National employees to grow its business." *See* Motion, p. 4, ¶ 12. Notably, National offers no citation to the record, nor can it, as there is no evidence that Ascendo specifically targeted National employees to hire for the purpose of developing its own business.

2

In addition National improperly attempts to impute the conduct of Costello onto named Defendant Ascendo. *See* Motion, p. 4, ¶ 12. By misleadingly referring to Costello as the "president" of "Ascendo", National misconstrues Costello as the president of named Defendant Ascendo Resources LLC, when she is actually the president of Ascendo Healthcare Staffing LLC, a separate entity. *See* Costello Dep. 36:1-20.

Further, National improperly asserts inadmissible statements concerning the forensic imaging and metadata of Sanchez's electronic devices. *See* Motion, p. 5 ¶ 21 (citing Transcript of Deposition of Jonathan Skepko ("Skepko Dep.") at 128:10-129:3), p. 6 ¶ 24 (citing Skepko Dep. 130:22-131:9). Courts routinely determine that the analysis and interpretation of metadata requires expert testimony, but National has not disclosed any expert who will testify regarding metadata here. *See Highland Consulting Group v. Minjares*, 2021 WL 3793026, at *1 (S.D. Fla. Aug. 26, 2021).[1] Thus, Defendants object, pursuant to Fed. R. Civ. P. 50(c)(2), that this assertion cannot be presented in a form that would be admissible in evidence.

Defendant further disputes the representations related to the conduct of Heidi Sanchez, which are based solely on the self-serving statements by National's corporate

---

[1] *See also Allegis Group, Inc. v. Bero*, 689 F. Supp. 3d 81, 108 (D. Mar. 2023) ("Courts routinely conclude that the interpretation and analysis of metadata requires an expert qualified in the field); *Traverse v. Gutierrez Co.*, 2020 WL 9601830, *2 (D. Mass. June 26, 2020) ("Defendants have failed to heed this Court's concern that they had failed to provide expert testimony regarding under what circumstances the 'last modified' date in an Excel spreadsheet will change."); *State v. Payne*, 104 A. 3d 142, 148 n.14 (2014) ("When metadata is presented in the course of litigation, it is accomplished by expert testimony.") (citing *United States v. Lanzon*, 639 F. 3d 1293, 1297 (11th Cir. 2011)).

representative. *See* Motion, pp. 5-6, ¶¶ 21, 23, 24. National has proffered no other proof that any of the these allegations are true beyond these self-serving statements.

National further misrepresents the content and context of the text messages between Costello and Sanchez, claiming it is undisputed that they "had extensive text discussions debating how Sanchez could work for Ascendo without violating her restrictive covenants." *See* Motion, p. 6, ¶ 26. Costello testified that she was not aware of any terms of any agreement between Sanchez and National until this lawsuit. *See* Transcript of Deposition of Amy Costello ("Costello Dep.") 280:22-23, 309:2-3, 282:5-6, attached to the Motion as Exhibit D (D.E. 135-4).

Further, the agreement executed between Sanchez and National did not prohibit Sanchez from working for a competitor of National. Am. Compl., Ex. B. Thus, there is no dispute that it was ***not*** a violation of the Sanchez Agreement for Sanchez to work for Ascendo. *Id.* The texts on their face do not show any debate between Costello and Sanchez as to how to avoid violating any valid terms of the Sanchez Agreement.[2]

National also misrepresents the meaning of a text message from Costello despite possessing sworn testimony from Costello explaining what she meant when she told Sanchez "oh no . . . his response wasn't good". *See* Motion, p. 6, ¶ 27. National omits the fact that Costello testified that her statement that "his response wasn't good" referred to the fact that the attorney she contacted was too busy. *See* Costello Dep.

---

[2] Even if Sanchez and Costello discussed avoiding a violation of an agreement between National and Sanchez, there should be no penalty for efforts to avoid breaching an agreement.

4

281:5-6, 281:14-15, 284:4-5. She was not referring to the status of Sanchez's employment with Ascendo. *Id.* Thus, National's representation that paragraph 27 is an undisputed material fact is misleading in its omission.

Finally, National has no basis to claim as an undisputed material fact that "*[s]atisfied with this conclusion*[3], Sanchez started working at Ascendo on or about May 2, 2022." *See* Motion, p. 7, ¶ 29 (emphasis added). Costello explained in her deposition that her text to Sanchez referred to the fact that Sanchez would be able to make enough money working for Ascendo to cover her legal fees in the lawsuit brought against her by National. *See* Costello Dep. 291:19-292:12. Costello and Sanchez were *not* discussing ways to harm National. *Id.*

### III.    ARGUMENT

#### A. *The Undisputed Material Facts Demonstrate Defendants Did Not Tortiously Interfere with the Benami and Sanchez Agreements*

In order to succeed on its tortious interference claims, National must establish: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's unjustified and intentional interference with the contract or procurement of the contract's breach; and (4) damages to the plaintiff as a result of the interference. *RxStrategies, Inc. v. CVS Pharmacy, Inc.*, 390 F.Supp.3d 1341, 1353 (M.D. Fla. 2019). An actual breach is necessary to succeed on a tortious interference claim. *Bergeron Environmental and Recycling, LLC v. LGL Recycling, LLC*, 398 So. 3d 988 (Fla. 4th DCA

---

[3] Referring, according to Plaintiff, to Costello telling Sanchez that she "can make enough money here to make sure National eats shit if you want." *See* Motion, p. 6, ¶ 28.

5

2024), citing *Gerber v. Keyes Co.*, 443 So. 2d 199, 200-01 (Fla. 3d DCA 1983) (holding that no cause of action for tortious interference existed where the contract was never breached); *Symon v. J. Rolfe Davis, Inc.*, 245 So. 2d 278, 280 (Fla. 4th DCA 1971) (finding no cause of action for tortious interference with a business relationship in the absence of a breach).

### 1. It is undisputed that the Benami and Sanchez Agreements did not prohibit Benami or Sanchez from working for Ascendo.

Despite the misleading titles of the documents, it is undisputed that the "Noncompetiton, Nonsolicitation and Confidentiality Agreement" signed by each Benami and Sanchez (respectively the "Benami Agreement" and the "Sanchez Agreement") **do not** include any "noncompetition" provision prohibiting Benami or Sanchez from working for a competitor including Ascendo. *See* Am. Compl., Ex. A, Ex. B. *See also* Skepko Dep. 205:9-21. The mere titling of the Agreements as "Noncompetition" does not make them valid and enforceable noncompetition agreements.[4]

Defendants do not dispute the existence of the Benami Agreement. Defendants dispute Plaintiff's unreasonable interpretation of the Benami Agreement to the extent Plaintiff believes it restricted Benami from working for Ascendo, which it plainly does

---

[4] While it is undisputed that the Sanchez Agreement did not preclude Sanchez from working for a competitor, it is not difficult to see how Sanchez could have been confused that it did because the document is titled "**Noncompetition**, Nonsolicitation and Confidentiality Agreement," despite containing no actual non-compete provisions. *See* Am. Compl., Ex. B (emphasis added).
Indeed, this distinction appears to continuously evade National's understanding as well. *See* Am. Com., ¶¶ 22, 40-43, 65, 71, 73, 74, 77, 79, 81.

not.[5] Further, National has failed to identify or even claim any breach of the Agreement by Benami. Moreover, National has now moved to dismiss its claims against Benami with prejudice. National's Motion to Dismiss *with prejudice* imposes an adverse inference on Count I for tortious interference with the Benami Agreement, as it indicates that National is aware it has no basis for a claim for breach of contract against Benami. Therefore, National is not entitled to summary judgment.

### 2. It is undisputed that Benami did not breach his Agreement.

National's sole basis for its claim that Benami breached the Agreement is that he worked for Ascendo. *See* Skepko Dep. 204:7-14, 205:12-21. There can be no dispute that Benami did ***not*** breach his Agreement by working for Ascendo, per the plain language of the Agreement. *See* Am. Compl., Ex A; s*ee also* Skepko 205:9-21. In fact, National must agree that Benami did not breach his Agreement because it chose *not* to bring a cause of action against Benami for breach of contract, *and* National has now moved to dismiss Benami with prejudice in this action. [D.E. 155]

Even considering the other general allegations raised against Defendants collectively in the Amended Complaint, which appear to include Benami at times, it is undisputed that Benami did not breach his Agreement by other means. National has no evidence that any of its purported trade secrets were obtained by Benami. Skepko

---

[5] Defendants further dispute National's representation that "Benami acknowledged that the information protected by the agreement included 'trade secrets, confidential information, and information concerning customer or client relationships,'" and point out that the citation to this statement in the Motion is unsupported by the documents it cites, specifically the excerpt from Benami's deposition transcript. *See* Motion, p. 20.

Dep. 89:7-10. National has no evidence that Benami provided any of its confidential information to any other defendant. Skepko Dep. 205:24-206:2. Benami did not solicit any National employees, he did not disclose any of National's proprietary or confidential information or trade secret to any other Defendant nor has he been involved in any scheme to do so. *See* Benami ¶¶ 13, 16, 17.

Thus, National has absolutely no evidence that Benami actually breached the Benami Agreement, and, therefore, National's claim for tortious interference fails and should be dismissed.[6]

### 3. It is undisputed that Sanchez did not breach her Agreement.

The only argument proffered in National's Motion in support of Sanchez's breach of her Agreement is her employment with Ascendo.[7] *See* Motion, pp. 21-24. Indeed, National specifically states that "Sanchez's employment would violate the terms of the agreement" and "Ascendo, through Costello, further advised Sanchez to disregard the restrictive covenant and work for Ascendo anyway, thereby inducing

---

[6] National has also conceded that it has no damages as a result of any alleged tortious interference with the Benami Agreement (*see* Skepko Dep. 206:3-11), as well as that it has no evidence of any interference by any Defendant with the Benami Agreement (*id*. 203:4-25). For these reasons, *inter alia*, Defendants moved for summary judgment. (Doc. No. 138)

[7] Noticeably, National's Motion makes no mention of its claims in the Amended Complaint that Sanchez also breached the Sanchez Agreement by providing National's confidential and proprietary information to Ascendo. *See* Am. Compl., ¶ 79. Thus, it would appear that, since National seeks summary judgment against Ascendo on the first three elements of its Count II tortious interference claim based on the arguments and evidence described in its Motion, National has abandoned its position that Ascendo tortiously interfered with the Sanchez Agreement by inducing Sanchez to disseminate National's information and data.

Moreover, National makes no mention of any involvement by individual defendants Meadows, Atcachunas, Benami and Foor in any alleged interference with the Sanchez Agreement; thus, it appears this claim has also been abandoned by National.

Sanchez to breach her agreement." *Id.* p. 22-23. As established above based on the similarities between the Benami and Sanchez Agreements, Sanchez's employment with Ascendo did not violate or breach her Agreement. *See* Am. Compl., Ex. B. Thus, yet again, with no actual breach of the Sanchez Agreement, National's claim for tortious interference fails and should be dismissed.

    4. **National is not entitled to summary judgment on its claim for tortious inference with the Sanchez Agreement against Ascendo.**

National has failed to establish the remaining elements of its tortious interference with the Sanchez Agreement claim. National attempts to paint a picture of an elaborate scheme by Ascendo, specifically through Costello, to solicit Heidi Sanchez to join Ascendo in a purported violation of the Sanchez Agreement. However, National's efforts are in vain, as the record evidence directly contradicts National's fiction.

As stated above, National improperly attempts to impute Costello's conduct onto Defendant Ascendo Resources, LLC, due to her purported title as its "president". *See* Motion, p. 4, ¶ 12. However, it is undisputed that Costello was <u>not</u> the president of Defendant Ascendo, but rather she was the president of Ascendo Healthcare Staffing LLC. *See* Costello Dep. 36:1-20. The only purported statements of undisputed fact against Ascendo are that it was a competitor of National (Motion, p. 4, ¶ 10), it has a practice of using National employees to grow its business which is disputed above (*id.*, ¶ 12), Ascendo hired not less than five former National employees (*id.* ¶ 13), and that Ascendo solicited Sanchez to join Ascendo which no one was not

9

prohibited from doing (*id.*, p. 6, ¶ 25). Even if the Court were to impute Costello's actions onto Ascendo, they do not establish a cause of action that Ascendo tortiously interfered with the Sanchez Agreement.

With regards to knowledge of the contract, the evidence shows that neither Costello nor Ascendo knew what Sanchez signed or agreed to with National, as Costello never saw the Sanchez Agreement before this lawsuit. *See* Costello Dep. 280:22-23, 309:2-3, 282:5-6; Holzer Aff. ¶¶ 6-7, 22-29. Moreover, not all of National's restrictive covenants with its employees are the same, and so the mere fact that Costello signed her own unique agreement with National does not confer upon her knowledge of the terms of the Sanchez Agreement. *See* Skepko Dep. 207:21-23.

As for interference, the record evidence establishes that Ascendo did not procure a breach of the Sanchez Agreement by hiring Sanchez. Ascendo also did not interfere with the Sanchez Agreement or induce Sanchez to breach it. *See* Skepko Dep. 189:10-190:18; Holzer Aff. ¶¶ 6-10, 22, 29. Nevertheless, in support of its narrative, National misquotes and takes out of context witness communications and testimony. For instance, National points to the texts between Sanchez and Costello as proof that Ascendo was "aware that Sanchez's employment would violate the terms of the agreement." *See* Motion, p. 22. If anything, the texts could be conceived as indicative of Costello's concern for Sanchez to *not* breach the terms of any potential agreement she may have had with National. *See* Costello Dep. 280:4-14.

National also misquotes Costello's text messages about speaking with an attorney, asserting "Costello even inquired with legal counsel on the issue and told

Sanchez 'oh no . . . his response wasn't good.'" *See* Motion, p. 22, citing Costello Dep. 283:25-284:3. In fact, Costello testified that she did not help Sanchez find an attorney, she merely provided an attorney's contact information, and her statement that "his response wasn't good" referred to the fact that the attorney was too busy. *See* Costello Dep. 281:5-6, 281:14-15, 284:4-5. The text does not, as National hopes this Court would believe, establish that it would not be good for Sanchez work for Ascendo due to her Agreement with National.

National also points to Costello's text that Sanchez "can make enough money here to make sure National eats shit if you want" in an attempt to argue that Costello, and thus Ascendo, acted with actual malice to harm National. *See* Motion, p. 24. However, Costello explained that this text referred to the fact that Sanchez would be able to make enough money working for Ascendo to cover her legal fees in the lawsuit brought against her by National. *See* Costello Dep. 291:19-292:12. This critical explanation was noticeable omitted from National's Motion. Moreover, National is not harmed by Sanchez making money from another employer.

Furthermore, the cases cited by National related to "improper" interference have no bearing here, as the facts are not analogous to those at hand and the legal principles referred to by National are not present here. *See* Motion, p. 23, citing *McCurdy v. Collis*, 508 So.2d 380 (Fla. 1st DCA 1987) (considering whether statements made by the defendant to an employer concerning a former employee fell under a qualified privilege "in the interests of society"), *Weisman v. Southern Wine & Spirits of America, Inc.*, 297 So.3d 646, 650 (Fla. 4th DCA 2020) (considering competition

11

privilege, which applies when two companies are competing over a specific contract or business), *Bluesky Greenland Envtl. Sols., LLC v. 21st Century Planet Fund, LLC*, 985 F.Supp.2d 1356 (S.D. Fla. 2013) (considering competition privilege), *Babson Bros. Co. v. Allison*, 337 So.2d 848 (Fla. 1st DCA 1976) (considering privilege where interfering party has a financial interest in a party to the contract); *Yoder v. Shell Oil Co.*, 405 So.2d 743 (Fla 2d DCA 1981) (considering privilege to interfere in contract for sale of a dealership because of a financial interest). There have been no assertions of any qualified, competition or financial interest privileges here, as the situations in which such privileges arise are not present in this case.

Finally, National incorrectly represents that the measure of damages is an issue for trial. In fact, National has confirmed that it has not quantified any damages in this case, nor can it causally relate any lost revenue to any Defendant or any cause of action. *See* Skepko Dep. 206:3-11 (no evidence of damage by tortious interference with Benami Agreement), *id.* 158:18-22 (no evidence of damage by transmission of Encompass list allegedly provided by Sanchez), *id.* 160:20-161:3 (no evidence of damage by transmission of Saber list allegedly provided by Sanchez), *id.* 249:13-15 (no evidence of damage by use of email templates allegedly provided by Sanchez), *id.* 191:9-12 (no evidence of damage as a result of Sanchez accessing National's data and information), *id.* 241:16-21 (no evidence of amount of damages as to any particular count in the Amended Complaint), *id.* 241:5-242:5 (no evidence of amount of damages

12

as to any individual defendant). Therefore, there is no triable issue on damages because National has none to speak of.

In sum, National is not entitled to summary judgment on any element of its claim for tortious interference with the Sanchez Agreement against Ascendo, and National's Motion should be denied.

### B. *Affirmative Defenses*

#### 1. Denials (Defenses Nos. 1-5, 7-20)

As a preliminary matter, the Federal Rules of Civil Procedure require that a Rule 12(f) motion to strike be filed within 21 days after being served with the pleading. Fed.R.Civ.P. Rule 12(f)(2). Defendants' Answer was filed on August 15, 2024 - 320 days prior to the date on which National filed its Motion. National is out of time, and its request to strike Defendants' affirmative defenses should be denied.

Further, a motion to strike is considered a drastic remedy and is often disfavored. *Birren v. Royal Caribbean Cruises, Ltd.*, 336 F.R.D. 688 (S.D. Fla. 2020). National's argument that Defendants' affirmative defenses are actually just general denials and therefore should be stricken lacks legal support, as evidenced by National's failure to cite any affirming legal authority. Courts generally treat a mislabeled defense as a denial rather than striking it. *See Adams v. Jumpstart Wireless Corp.*, 294 F.R.D. 668 (S.D. Fla. 2013) (holding proper remedy for mislabeled denial is to treat it as a denial rather than striking it); *Losada v. Norwegian (Bahamas) Ltd.*, 296 F.R.D. 688 (S.D. Fla. 2013) (finding mislabeled affirmative defenses should be treated as specific denials); *Birren*, 336 F.R.D. 688 (S.D. Fla. 2020) (treating a mislabeled affirmative defense as a

denial rather than striking it). This approach is supported by Rule 12(f), which allows courts to strike insufficient defenses but does not mandate striking mislabeled denials. Thus, to the extent this Court deems any of Defendants' affirmative defenses to be general denials, they should not be stricken.

### 2. Preemption (Affirmative Defense No. 6)

This Court's denial of Defendants' Motion to Dismiss Count I on the basis that it is preempted by Count III does not waive Defendants' ability to assert the preemption defense later in the case. (Doc. No. 59) Moreover, the facts as established by the record evidence which have developed since the Court's previous Order support a finding of preemption as to Count I.

First, the only bases pled as to how Benami breached the Benami Agreement are that Benami worked for Ascendo and he provided National's confidential information to Defendants.[8] *See* Am. Compl., ¶¶ 71, 73. Count I does not include any allegation that Benami, specifically, assisted Ascendo in soliciting any employees of National. *See* Am. Compl., ¶¶ 71-75. It is undisputed that the Benami Agreement on its face does not include any provision against working for a competitor, and thus, Benami's conduct of working for Ascendo cannot form Plaintiff's basis for Count I. *See* Am. Compl. ¶ 33; Am. Compl., Ex A; *see also* Skepko Depo. 205:9-21. National does not contend that Benami breached his Agreement by any means other than

---

[8] While the Amended Complaint alleged that Benami was induced to work for Ascendo and provide National's confidential information to Defendants, in violation of his Agreement, National's corporate representative clarified that the only basis for Benami's breach of his Agreement is his employment with Ascendo. *See* Skepko Dep. 204:7-14, 205:12-21.

14

working for Ascendo. *See* Skepko Dep. 204:7-14, 205:12-21. Accordingly, Count I would indeed be appropriately preempted by Count III, as the Benami tortious interference claim could only be based on allegations of trade secret misappropriation, which form the basis for Count III. Thus, the preemption defense remains applicable.

### 3. Contractual Preemption (Affirmative Defenses 21 & 22)

The undisputed material facts show that the Sanchez Agreement did not prohibit Sanchez from working for Ascendo. *See* Am. Compl., Ex. B. Accordingly, Defendants did not induce Sanchez to breach the Sanchez Agreement by hiring her to work for Ascendo. Plaintiff has offered no undisputed facts in opposition. Therefore, Plaintiff's claim that Defendants tortiously interfered with the Sanchez Agreement by inducing Sanchez to work for Ascendo is barred by the Sanchez Agreement on its face, and affirmative defense No. 22 is valid.

Further, the Sanchez Agreement prohibits Sanchez from disseminating National's its trade secrets. However, the items National has identified in this case as its "trade secrets" (i.e., the provider timecard, Encompass and Saber client lists, and email templates) do not qualify as protectable trade secrets because they consist of non-confidential and generally known information that is readily available from public sources. *See* Griffin Dep. 71:7-16. *See* Skepko Dep. at 141:4-16, 143:3-16, 151:22-152:6, 154:11-19, 244:23-245:3. Thus, any claims based on Sanchez's alleged theft of National's information are barred by the Sanchez Agreement which applied only to National's trade secrets and confidential information.

Without taking a position on National's arguments related to affirmative defense No. 21, Defendants agree to withdraw affirmative defense No. 21.

### 4. Causation General Denials (Nos. 23, 24, 25, 26, 28)

Dismissal by summary judgment is not appropriate for the causation denials. Moreover, the record evidence supports Defendants' denial of any responsibility for National's alleged damages. For instance, there were many factors other than Defendants' purported conduct that could explain the cause of National's alleged decline in revenue. *See* Unterholzner Dep. 44:7-25. Moreover, National has no evidence of any damages it allegedly suffered as a result of Defendants' purported conduct. *See* Skepko Dep. 241:5-242:5. Thus, with no damages, National has no basis to claim that Defendants caused its damages.

### 5. Failure to Mitigate (Affirmative Defense No. 27)

To the extent National claims Defendants have failed to plead or produce evidence explaining how National could have mitigated its damages, National's own failure to produce *any evidence* of its own damages has hamstrung Defendants' ability to demonstrate National's failure to mitigate. *See* Unterholzner Dep. 47:16-19, 58:12-15, 62:4-7, 63:2-11, 82:1-82:25. Indeed, National's damages expert identified multiple factors other than Defendants' purported conduct which could have resulted in National's decline in revenue, but the expert failed to evaluate the potential effects of any of these other factors. *See* Unterholzner Dep. 44:7-25. Additionally, National's Rule 26 disclosures failed to include any damages calculation. *See* Defendants' Motion for Summary Judgment (Doc. No. 138), Ex. M. Ignoring the fact that affirmative

16

defenses are pled in order to avoid waiver, in the alternative, and based on the limited information known to Defendants before discovery, Plaintiff seeks to require Defendants to plead this defense with a level of detail not present at any point in this case, including in Plaintiff's written discovery responses, depositions, and expert reports. Without knowing the pertinent information of the amount and composition of National's damages, Defendant cannot yet know the extent of National's failure to mitigate. Thus, summary judgment is not merited.

### 6. Assumption of the Risk (Affirmative Defense 29)

The affirmative defense of assumption of the risk may apply to a claim for misappropriation of trade secrets if the trade secret owner failed to take reasonable measures to maintain the secrecy of the trade secret. National states, "it is unclear how any party can assume the risk that its trade secrets or confidential business information would be stolen by its former employees and used to develop a competing project by the party's competition," but such a possible scenario is exactly why plaintiffs must show they took reasonable steps to protect the secrecy of their purported trade secrets. *See Hennegan Co. v. Arriola*, 855 F.Supp.2d 1354 (S.D. Fla. 2012) (employer failed to show that it took reasonable steps to protect secrecy if its pricing information, as is required to state a claim for misappropriation under FUTSA). National has failed to establish with any undisputed facts that its actions did not undermine the statutory elements of its trade secret claim. Thus, National is not entitled to summary judgment.

17

### 7. Setoff (Affirmative Defense No. 31)

National entered into a Settlement Agreement with Sanchez in her bankruptcy case.[9] The damages claimed by National here are the same as those claimed against Sanchez, specifically the entire value of National's business. Therefore, if Sanchez pays National for any portion of its claimed damages, Defendants are entitled to a set off.

### 8. Affirmative Defenses Nos. 30, 32 and 33

Without taking a position on National's arguments, Defendants agree to withdraw its affirmative defenses Nos. 30, 32 and 33. Thus, National's request for summary judgment is moot and should be denied.

## IV. CONCLUSION

WHEREFORE, Defendants, Ascendo Resources, LLC, Steven Meadows, Jacylyn Atcachuans, Benjamin Benami and Michael Foor, respectfully request that the Court deny Plaintiff's Motion for Partial Summary Judgment, and grant any other, further relief as the Court deems just and equitable.

Respectfully submitted,

/s/ Lan Kennedy-Davis
LAN KENNEDY-DAVIS
Florida Bar No.: 534021
E-mail: lkennedy@rumberger.com
SUZANNE BARTO HILL
Florida Bar No.: 0846694
E-mail: shill@rumberger.com

---

[9] *In re: Heidi L. Sanchez*, Case No: 6:23-bk-01483-TPG, United States Bankruptcy Court, Middle District of Florida, Orlando Division

SAMANTHA C. DUKE
Florida Bar No.:  0091403
E-mail:  sduke@rumberger.com
SARA LEWIS KALLOP
Florida Bar No.:  1018619
E-mail:  skallop@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 South Orange Avenue, Suite 1400
Orlando, Florida 32801
Tel:  407.872.7300 / Fax:  407.841.2133
*Attorneys for Defendants, Ascendo Resources, LLC, Steve Meadows, Jaclyn Atachunas, Michael Foor and Benjamin Benami*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 22, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing via email to all counsel of record.

/ s / *Lan Kennedy-Davis*
LAN KENNEDY-DAVIS
Florida Bar No.:  534021
E-mail:  lkennedy@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 South Orange Avenue, Suite 1400
Orlando, Florida 32801
Tel:  407.872.7300 / Fax:  407.841.2133
*Attorneys for Defendants, Ascendo Resources, LLC, Steve Meadows, Jaclyn Atachunas, Michael Foor and Benjamin Benami*