UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NATIONAL STAFFING SOLUTIONS,
INC., a Florida corporation,

    Plaintiff,

v.                                     Case No. 6:23-cv-01542-CEM-LHP

ASCENDO REOURCES, LLC, et al.

    Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT AMY
COSTELLO'S MOTION FOR SUMMARY JUDGMENT**

    Plaintiff, NATIONAL STAFFING SOLUTIONS, INC. ("National"), files this memorandum in opposition to the Motion for Summary Judgment ("Motion"), Doc. 140, filed by Defendant Amy Costello ("Costello"). Because disputes of material fact remain, summary judgment in favor of Costello is improper.

**INTRODUCTION**

    This is straightforward case of corporate theft and interference. In 2018, Amy Costello, a former National employee, joined Ascendo in order to create a healthcare division that would compete with National. After attempting to build a brand for years, Ascendo and Costello sought out and hired key former National employees, including Heidi Sanchez ("Sanchez").

    Costello, then an officer of Ascendo, was aware that Sanchez, and others they were hiring, were subject to restrictive covenants and induced them to breach

1

those covenants with the promise that they would make enough money that National would "eat shit." Costello and Ascendo through these hirings gained access to material information and forms used by National in the operation of its business.

While none of these facts are subject to credible dispute, and liability is therefore definitively proven, Ascendo and Costello have moved for summary judgment. The Defendant's principal contention is that there is no evidence to either support National's claims or to permit a trier of fact to fully ascertain damages. In the first instance, this argument is disingenuous, at best.

There is no credible dispute that Ascendo, at Costello's direction, established an entire domain in order to send email blasts customers, and that those emails were directed to clients of National. The fact that National has little evidence as to the full scope of Ascendo's conduct is because Ascendo destroyed the domain it used for these blasts. That spoliation is the subject of additional motion practice, and at the bare minimum summary judgment is not appropriate.

Moreover, the evidence adduced thus far, when taken in a light most favorable to the non-moving party, clearly demonstrates Defendants' liability and therefore summary judgment in favor of the Defendants cannot be granted.

## DISCUSSION

"Summary judgment is appropriate only in circumstances where the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1138

(M.D. Fla. 2007) (cleaned up). The moving party bears the burden of showing that no genuine issue of material fact exists. *Id.*

The Court is required to draw all inferences in favor of the non-moving party and resolve all reasonable doubts against the moving party. *Id.* "All justifiable inferences are to be drawn in favor of the non-movant, and the evidence presented by the non-movant is to be believed by the court." *Id.*[1]

## I. Costello is Not Entitled to Summary Judgment Based on the Absence of Evidence She Lost and Destroyed.

Costello's common theme is that summary judgment should be granted in her favor because National lacks evidence to support its claim. However, as set forth in more detail in National's Motion for Spoliation Sanctions, Docs. 124, 147, a large part of Ascendo's misconduct was conducted on a web domain that Defendants allowed to be destroyed. As this Court has recognized, the destruction of evidence leaves only a defendant's self-serving testimony on these issues, and therefore summary judgment is not appropriate. *Nuvasive, Inc. v. Absolute Med.*, No. 6:17-cv-2206-Orl-41GJK, 2021 WL 3008153, 2021 U.S. Dist. LEXIS 136873, at *21 (M.D. Fla. May 4, 2021).

There is little credible dispute that spoliation occurred here. The evidence adduced thus far shows that Costello directed Steven Meadows to set up a web domain, ascendohc.com, for use in Ascendo's healthcare business. Doc. 147 at 4.

---

[1] National filed for dismissal of Counts IV and V. Doc. 154. The request for dismissal renders Costello's motion on these counts moot. *Holers v. State Farm Mut. Auto Ins. Co.*, No. 6:08-cv-1260-Orl-19DAB, 2008 U.S. Dist. LEXIS 111163, at *2 (M.D. Fla. Aug. 7, 2008).

3

Despite being under a duty to preserve this domain, both personally and as President of Ascendo, the domain was deleted in June 2023. *Id.* at 6, 9-10.

Had these records been preserved they would have been highly relevant to whether Costello, among other things, aided or directed Sanchez to take, retain, share, or use documents and data Sanchez stole from National. They would also show whether Costello had access to or used these documents.

Beyond being relevant to issues of liability, these records would also bear on questions of damages. Costello relies heavily on the supposed inadequate evidence of damages. It is of course difficult to quantify damages without knowing exactly how Ascendo, and Costello via override commissions for business generated by Sanchez, profited from use of the stolen National documents and from business with National's customers. But simply because damages are difficult to quantify on the record as it stands does not mean they do not exist.

Taking all evidence, including the evidence of spoliation, in a light most favorable to National, the alleged lack of evidence supports denial of Costello's motion for summary judgment. Taking the evidence in light most favorable to National, Costello and Ascendo destroyed key evidence, which calls into question the credibility of all Costello's testimony, including the self-serving declaration submitted in support of her motion for summary judgment. Where the credibility of testimony is at issue, summary judgment is improper. *Furmanite*, 506 F. Supp. 2d, at 1138; *Patterson v. City of Melbourne*, 669 F. Supp. 3d 1204, 1224 (M.D. Fla. 2023); *R&M Mktg., Inc. v. Best Buy Auto of Tampa Bay, Inc.*, No. 8:16-cv-46-T-

TBM, 2017 WL 2869541, 2017 U.S. Dist. LEXIS 106093, at *10 (M.D. Fla. Apr. 12, 2017).

Spoliation of evidence in this case creates an unavoidable dispute of material fact precluding summary judgment in favor of Costello.

## II. Costello is Not Entitled To Summary Judgment on Counts I and II for Tortious Interference.

A. <u>The Noncompetition Agreements are Valid and Enforceable Contracts.</u>

Costello next contends that summary judgment is appropriate on counts one and two because the restrictive covenant agreements between National and Sanchez and Benami are not enforceable as a matter of law. As to Sanchez, this argument fails as the Sanchez Noncompetition Agreement been found enforceable over the exact same arguments made by Costello here. *Nat'l Staffing Sols., Inc. v. Sanchez*, 626 F. Supp. 3d 1247, 1252 (M.D. Fla. 2022).

With respect to Benami, then, Costello argues that the burden is on National to establish the validity of the restrictive covenant. In order for a restrictive covenant to be valid, the party seeking to assert the benefit of the covenant must show that it supports a legitimate business interest. Courts routinely find that protection of proprietary business information that could be utilized by a competitor to advance the competitor's business interest justifies a restrictive covenant. *See, e.g.*, *Nuvasive*, 2021 U.S. Dist. LEXIS 136873, at *48; *Hayes Med. Staffing, Ltd. Liab. Co. v. Eichelberg*, No. 0:23-cv-60748-GAYLES, 2024 WL 670440, 2024 U.S. Dist. LEXIS 34477, at *25 (S.D. Fla. Jan. 23, 2024); *All Star*

*Recruiting Locums, LLC v. Ivy Staffing Sols., LLC*, No. 21-CV-62221-MORE, 2022 WL 2340997, 2022 U.S. Dist. LEXIS 66558, at *40 (S.D. Fla. Apr. 8, 2022).

Costello testified that obtaining the kind of information National sought to protect via the Noncompetition Agreements would be a "huge help" to any competitor staffing agency. Costello Dep. 263:25-264:9 (Doc. 134-4 at 17-18). As such, taking the facts in light most favorable to National, the restrictive covenants are supported by a legitimate business interest and therefore summary judgment is not appropriate.

B. <u>Costello Had Knowledge of Sanchez's Noncompetition Agreement and Actively Procured its Breach.</u>

Costello next argues that summary judgement is appropriate because she merely knew Sanchez's agreement existed but not the specifics of that agreement. Doc. 140 at 13. Costello, however, cites no authority to suggest that a lack of awareness of the precise details of a Noncompetition Agreement means that she cannot tortiously interfere with that agreement.

Moreover, the evidence, taken in a light most favorable to National, shows that Costello, in fact, had awareness of the terms of the Sanchez agreement. The evidence shows that Costello spoke with a lawyer regarding the Sanchez agreement, and the lawyer advised Costello that the agreement made Sanchez's prospects of working at Ascendo "not good." Doc. Costello Dep. 283:25–284:3 (Doc. 134-1 at 23-24). In nearly the same breath where Costello told Sanchez of the attorney's advice, she also told Sanchez to disregard the Noncompetition

6

Agreement and come work for Ascendo, where she would make enough money to make National "eat shit." Costello Dep. 291:10-14 (Doc. 134-1 at 25).

Taking all facts in a light most favorable to National, Costello was clearly put on notice that she was risking interfering with Sanchez's Noncompetition Agreement and then actually interfered with that agreement. Therefore, summary judgment must be denied.

C. <u>There Are Disputes of Fact Regarding Costello's Knowledge of Benami's Noncompetition Agreement and Interference Therewith.</u>

Costello next represents that she never had a restrictive covenant with National and therefore could not know that other employees would have had restrictive covenants. Doc. 140 at 3 ¶ 10. However, the evidence, taken in a light most favorable to National, again dispels this argument.

Contrary to her current contentions, Costello admitted to signing a restrictive covenant agreement with National. Costello Dep. Ex. 1 (Doc. 134-4 at 26-32). Costello also testified that she knew other National employees were subject to restrictive covenants. Costello Dep. 66:8-67:1, attached as Exhibit A. As such, Costello cannot credibly argue she is entitled to summary judgment on the grounds that she was unaware that other former National employees had restrictive covenant agreement.

Costello further claims that she had no involvement with Benami or his work at Ascendo and therefore could not be charged with knowledge of his Restrictive Covenant Agreement or his breach. However, Costello participated in Benami's

7

hiring process and later became his supervisor. Benami Dep. 28:19-29:25, attached as Exhibit B; Costello Dep. 144:13-18 (Doc. 134-4 at 16). As such, Costello knew that Benami's prior employer was National.

Moreover, Costello testified that her process in building a book of business as a staffing employee would focus on generating a large list of contacts in a CRM system and then conducting mass outreach to those contacts. Costello Dep. 263:25-264:9 (Doc. 134-4 at 17-18). Taking Costello's approach towards staffing and considering it in light of the fact that she was Benami's direct supervisor, and viewing these facts in a light most favorable to National, it is reasonable to infer that Costello intended Benami to execute on Costello's action plan using the contacts from his immediate past employer, National.

This conclusion is further bolstered by the mass poaching of former National employees by Ascendo after its independent efforts to develop a healthcare division bore little fruit. Taking these facts, and drawing all reasonable inferences, in a light most favorable to National, the evidence demonstrates that Costello likely wanted National's former employees because she felt they could bring business from National over to Ascendo. As such, summary judgment in favor of Costello is not appropriate.

D. <u>There is a Dispute of Fact Regarding Damages.</u>

Damages for tortious interference may comprise (1) the pecuniary loss of the benefits of the contract, (2) consequential losses from the interference, and (3) reputational harm tied to the interference. *SIG Sauer, Inc. v. D&M Holding Co.,*

*Ltd. Liab. Co.*, No. 8:21-cv-0194-KKM-SPF, 2022 U.S. Dist. LEXIS 26515, at *21 (M.D. Fla. Feb. 14, 2022).

Because damages are largely left to the sound judgment of the trier of fact, summary judgment on the basis that damages have not been proven with "exact pecuniary computation" is inappropriate. *Larweth v. Magellan Health*, No. 6:18-cv-823-Orl-41DCI, 2019 WL 11866499, 2019 U.S. Dist. LEXIS 237193, at *38 (M.D. Fla. Dec. 17, 2019).

Restrictive covenants themselves have value to a business because they prevent employees from leveraging relationships and knowledge built at the employer's expense for a rival business. More simply, these contractual restraints prevent a rival from starting on third base through stealing valuable relationships and data by hiring away employees of their competitors.

The interference with Benami's and Sanchez's Noncompetition Agreements was part of an effort to accelerate Ascendo's healthcare division, which had languished for years prior to the concerted poaching of National's employees. In other words, Ascendo wanted to get a leg up in the healthcare staffing world through National's work, not its own. Costello, logically, would profit from Ascendo's success both as its president and because she received commissions based on the business generated by those underneath her. Costello Dep. 131:11-132:2, attached as Exhibit A.[2]

---

[2] Costello elsewhere discusses receiving override commissions, which are additional compensation paid to a manager or supervisor based on the performance of the employees they manage or supervise. Costello Dep. 291:10-14 (Doc. 134-4 at 25). Thus, Costello would have

Because the value in the interference was in effect recreating National's business in Ascendo's healthcare division, National asserted damages equal to the value of that business. Skepko Dep. 234:22-235:6 (Doc. 140-3 at 95-96). By inducing Benami and Sanchez to solicit National's business relationships, Ascendo benefitted by not having to incur its own expenses to develop these relationships. Costello benefitted by receiving commissions based on Benami's and Sanchez's success, success borne on the back of National's customer relationships.

Similarly, Ascendo avoided the expense of creating or otherwise acquiring data that it got through Benami and Sanchez handing it over in violation of confidentiality provisions in their Noncompetition Agreements. These are all pecuniary losses attributable to the interference with the Benami and Sanchez Noncompetition Agreements, and thus recoverable damages on the tortious interference claims.

Fixing damages with greater specificity is also complicated by Defendants' conduct. Ascendo has refused to produce documents concerning its revenues or profits, thus frustrating any attempt to calculate the actual value of consequential losses. Ascendo's corporate representative refused to testify on this topic (which was noticed for the deposition) without any claim of privilege. Holzer Dep. 312:5-12, 320:15-18, 321:11-19, 322:20-323:23, 324:4-15 (Doc. 145-1 at 9-15). And, as noted in Section I, documents that would have illustrated the extent of the business

---

profited directly from both Benami and Sanchez generating business for Ascendo's healthcare division.

lost from Sanchez's breach of her Noncompetition Agreement are all gone, rendering a more precise calculation impossible.

The record indicates that National suffered compensable damages. The precise value of the benefit obtained by using National's employees to accelerate Ascendo's healthcare division remains a dispute of material fact and summary judgment on this issue must be denied.

### III. Costello is not Entitled to Summary Judgment on Count III for Trade Secret Misappropriation.

Finally, Costello argues that she is entitled to summary judgment on Count III because she has conclusively proven the documents Ascendo stole from National are not protectable trade secrets.

As an initial matter, a dispute of fact remains regarding the complete scope of Defendants' misappropriation. Sanchez downloaded tens of thousands of documents. Skepko Dep. 126:3-127:10, 130:22-131:9 (Doc. 134-1 at 19-22, 27-30). This included at least 35 client, customer, or healthcare provider lists. *See* Docs. 103-1, 106 at 3. Prior to Ascendo's destruction of critical evidence, National obtained documents clearly showing Sanchez provided at least two customer lists for a "mail merge" upload—importing a large number of emails to Ascendo systems to facilitate bulk solicitation emails. Skepko Dep. 133:18-21 (Doc. 140-3 at 50); *see also* Meadows Dep. Ex. 10, 27, 30, attached as Exhibit C. Meadows testified that he, at Costello's direction, set up the ascendohc.com domain specifically for purposes of sending these email blasts. Meadows Dep. 166:7-167:23, 169:1-3, 20-

11

23, attached as Exhibit C.[3]

The ascendohc.com domain is gone because Defendants, either through their action or inaction, destroyed it. However, again taking all facts and inferences in the light most favorable to National, it is beyond reasonable to find that the remaining 33 customer lists that Sanchez stole from National and delivered to Ascendo were used exactly as the two lists for which evidence of misuse was not destroyed. Indeed, this use is entirely consistent with Costello's blueprint for building a business at a new staffing company. Costello Dep. 263:25-264:9 (Doc. 134-4 at 17-18).

Apparently recognizing that her argument stands on shaky foundations, Costello attempts to ignore the tens of thousands of documents and the hundreds of thousands of contacts that were stolen from National and delivered to Ascendo, instead focusing on a mere handful of the documents, and arguing that the information contained in those documents was "readily ascertainable."

For example, Costello claims that a Therapy Profile that was taken from National and used by Ascendo was not a protected trade secret because it was readily ascertainable. The Therapy Profile is used by National to vet candidates for placement, and Costello argued that because National does not place job candidates under an NDA when it questions them using the profile, it is not

---

[3] Costello, as Ascendo's president, can be liable for torts of the business in which she participates. *Costa Inv'rs, LLC v. Liberty Grande, LLC*, 353 So. 3d 627, 633-34 (Fla. 4th DCA 2022). Given Costello directed the setup of the ascendohc.com domain for Sanchez's use of the National documents to mass-solicit new business, Costello materially participated in the misappropriation and can be liable for this misappropriation.

protected information. But the fact that National does not subject job candidates to an NDA does not render the Therapy Profile a document available to the public "at a glance." *Fin. Info. Techs., LLC v. Icontrol Sys. USA, LLC*, 21 F.4th 1267, 1273 (11th Cir. 2021) (quoting *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002)).[4]

Similarly, National's corporate representative testified that various contact information, such as directors of nursing or therapy at target placement facilities, was not publicly known information. Skepko Dep. 154:24-155:4 (Doc. 140-3 at 60-61). He also testified that one was unlikely to acquire this information simply by cold calling the institution. Skepko Dep. 155:5-13 (Doc. 140-3 at 61). This establishes a clear dispute of fact concerning whether such information is readily ascertainable, especially when considering National's lists pertained to a significant number of institutions within a broader network. It also confirms Costello's own testimony about the value of having such information when starting a staffing business. Costello Dep. 263:25-264:9 (Doc. 134-4 at 17-18). If this information is so valuable, it follows that acquiring the information is difficult and time-consuming, not that such information can be readily gleamed by any interested party.

Ultimately, arguments such as Costello's that information is "available from other sources. . . are insufficient to demonstrate the absence of a genuine issue of

---

[4] Perhaps Defendants believe that they could extract the exact interview questioning from providers who have previously spoken with National—a speculative and tedious process that hardly suggests that such information is easily acquired by anyone who wants it.

13

material fact." *Furmanite*, 506 F. Supp. 2d 1134, 1141 (M.D. Fla. 2007). Rather, whether information is a trade secret is a question of fact that should be reserved for the jury. *Id.* ("Courts are extremely hesitant to grant summary judgment regarding the fact-intensive questions of the existence of a trade secret or whether a plaintiff took reasonable steps to protect its trade secrets."). Costello has not carried her burden to show a complete lack of dispute of material fact regarding the existence of a trade secret or misappropriation of the trade secrets. Summary judgment must be denied.

Costello also argues that National has shown no damages resulting from the misappropriation. As discussed above, the advantage derived from the misappropriation was that Ascendo obtained for free information, documents, and customer relationships National incurred costs to assemble.

This advantage could be calculated in the form of profits obtained from use of the misappropriated documents. *See* Fla. Stat. § 688.004; *see also Sensormatic Elecs. Corp. v. Tag Co. US, LLC*, 632 F. Supp. 2d 1147, 1187 (S.D. Fla. 2008). However, National cannot quantify this value because Ascendo has, without justification, refused to testify on this topic. Holzer Dep. 312:5-12, 320:15-18, 321:11-19, 322:20-323:23, 324:4-15 (Doc. 145-1 at 9-15).

The advantage could also be quantified as the amount defendants would have had to pay to obtain or prepare the documents. National spent money to prepare the customer lists, Therapy Profile, and other documents at issue. Alternatively still, the damages could be computed as National's year over year

14

revenue loss after Defendants' misconduct, amounting to tens of millions of dollars. *See, e.g.*, 137 at 2. As such, the remains a dispute of material fact regarding damages and summary judgment must be denied.

## CONCLUSION

Summary judgment in favor of any defendant is improper in this case because the spoliation of critical evidence leaves an inherent dispute of material facts. But even ignoring the spoliation, Costello fails to show a complete absence of dispute of material fact on any of the claims on which she seeks summary judgment. Rather, taking the evidence in the light most favorable to National shows that Costello is liable on Counts I, II, and III. There remains a dispute of fact regarding the precise measure of damages, and thus summary judgment cannot be granted to Costello.

Dated: July 22, 2025.

**s/ Scott A. Richards**
**Scott A. Richards, Esq.**
Florida Bar No. 72657
Primary: srichards@losey.law
Secondary: docketing@losey.law
**Losey PLLC**
1420 Edgewater Dr.
Orlando, FL 32804
Telephone: (407) 906-7389
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was filed with the Clerk of Court this 22nd day of June 2025, using the CM/ECF

15

system, which will send a notice of electronic filing to all counsel of record.

**s/ Scott A. Richards**
**Scott A. Richards, Esq.**
Florida Bar No. 72657
