UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| NATIONAL STAFFING SOLUTIONS, INC., | Case No.: 6:23-cv-01542-CEM-LHP |
| *Plaintiff*, | |
| v. | |
| ASCENDO RESOURCES, LLC; AMY COSTELLO; KRISTOFER MUNCH; et al., | |
| *Defendants*. | |

### DEFENDANTS COSTELLO AND MUNCH'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST AMY COSTELLO AND KRISTOPHER [SIC] MUNCH [Dkt. 134]

Defendants Costello ("**Costello**") and Munch ("**Munch**") serve their response in opposition to Plaintiff National Staffing Solution, Inc.'s ("**National**" or "**Plaintiff**") Motion for Partial Summary Judgment [Dkt. 134] ("**Motion**") as follows:[1]

### I. Response to Plaintiff's Statement of Undisputed Material Facts (Motion at ¶¶ 7-27)[2]

7. Undisputed.

8. Disputed. The cited testimony only acknowledges that Ascendo "decided to create or expand its healthcare staffing division" in the fall of 2017 and that the two companies compete, but it does not admit or contain any details regarding when the

---

[1] Plaintiff and Munch have filed a notice of settlement and are finalizing a written agreement. Dkt. 161. Munch still joins this response with Costello out of an abundance of caution.

[2] The paragraph numbers in this section correspond to those in the Motion that they are responsive to.

1

companies actually began competing or in what specific ways they allegedly compete. Healthcare staffing is broad term that encompasses the staffing of distinct types of providers. Staffing one type of provider is not competitive with staffing another. For example, the staffing a specialty pharmacist is completely different than staffing a traveling nurse or physician. *See* Dkt. 140-3 at 271:14-19 (National didn't do specialty pharmacy staffing)

9. Disputed. The cited testimony does not support the statement in paragraph 9. Rather, Munch said he "think[s]" relationships with clients and candidates are important, and then clarified "I think it's important to establish relationships in any business. I – I don't know if it's staffing, but it's – in any business." In the next sentence (omitted by Plaintiff), Munch explained that after COVID-19, "relationships aren't as important anymore" in the staffing industry. Dkt. 134-3 at 25:23-26:13.

10. Disputed. The first sentence of this paragraph does not cite to any part of the record, nor can it, as there is no evidence that Ascendo specifically targeted National employees to hire for the purpose of developing its own business. The second sentence is undisputed; aver that Costello was hired by Ascendo in September 2018, approximately a year after Ascendo created or expanded its healthcare staffing division. Dkt. 134-2 at 127:17-21, 128:13-18. The third sentence is disputed; Costello is the current president of Ascendo Healthcare Staffing, LLC (a separate entity from the Defendant Ascendo Resources, LLC). Dkt. 134-4 at 36:1-20. From the last sentence of this paragraph, it is undisputed that Costello served in various roles for National before she started working at Ascendo; the remainder of that sentence is

2

disputed as the cited testimony does not support the statements regarding her "primary responsibilities" as described by Plaintiff. Dkt. 134-4 at 49:15-50:7

11. Undisputed that Steven Meadows, Benjamin Benami, Michael Foor, Jacylyn Atcachunas, Matt Johnson, and Spencer Meadows were hired by Ascendo. Also undisputed that Defendants Steven Meadows, Benjamin Benami, Michael Foor, and Jacylyn Atcachunas and Spencer Meadows previously worked for Plaintiff. Disputed as to when Matt Johnson, Atcachunas, and Spencer Meadows were hired by Ascendo as the cited testimony does not reflect or support the time frame stated by Plaintiff. Dkt. 134-4 at 75:25-78:25. Aver that (i) Steven Meadows stopped working for Plaintiff in approximately 2017 (Meadows Dep. at 24:16-18), more than 2 years before he was hired by Ascendo in January 2020 (Meadows Dep. at 29:2-5), and (ii) Atcachunas stopped working for Plaintiff more than 2 years before she was hired by Ascendo in (Dkt. 134-4 at 76:21-24).

12. Undisputed that Sanchez worked for Plaintiff in multiple roles through sometime in 2021. Disputed that she worked for Plaintiff through August 2021; the cited testimony only says that she worked for Plaintiff until 2021. Dkt. 134-1 at 41:20.

13. Undisputed that, as a condition of her employment, Plaintiff requested Sanchez execute the agreement attached as Ex. E to the Motion. Dkt. 134-5.

14. Admitted that Benami was employed by Plaintiff at point as a recruitment consultant and then a recruiter. Disputed as to Benami's last day with Plaintiff as his testimony was he was not sure, but believed his end date was "probably January '21", not February 2021. Dkt. 134-6 at 13:16-18, 35:13-14.

15. Undisputed that, as a condition of her employment, Plaintiff requested Benami execute the agreement attached as Ex. F to the Motion. Dkt. 134-6.

16. Undisputed.

17. Disputed. Benami testified that in his roles at Ascendo he was responsible for "trying to open new business" and "opening new business in addition to maintaining the business and communicating throughout the process"; the cited testimony does not indicate the process for opening new business or his involvement, if any, in soliciting customers and does not support the conclusions regarding the same made by Plaintiff. Dkt. 134-6 at 10:14-11:19. Aver that Benami denied being involved in any scheme to solicit, either directly or indirectly, any business from Plaintiff for Ascendo or any other defendant. Dkt. 138-2 at ¶ 15. He also explained the differences between his responsibilities at Ascendo and Plaintiff as follows: At Plaintiff his "job was to recruit individual therapist. In contrast at Ascendo Healthcare [his] role is to develop relationships at the business level of nursing facilities as opposed to working with the clinicians directly. Therefore, [his] targets were different." *Id*. at ¶ 9. Benami confirmed that he never solicited any individual therapist he knew of or worked with while employed by Plaintiff since he resigned from Plaintiff. *Id*. at ¶ 10.

18. Undisputed that Skepko (Plaintiff's Corporate Representative) testified that Sanchez had access to a Google Drive with the listed materials. Disputed that Sanchez had access to all of those items during her entire employment as Skepko testified he took the documents unrelated to the Therapy Division out of that Google Drive in 2018. Dkt. 134-1 at 126:18-20.

19. Undisputed as to the first sentence. Disputed that National lost access to the data. Skepko Dep. at 123:13-126:5 (filed at Dkt. 138-1, under seal filed as 151, and referred to herein as "Skepko Dep."). Further the testimony relied upon for the facts stated in this paragraph is admissible as it is hearsay based on expert services provided in another case. [3, 4]

20. Undisputed.

21. Undisputed. Aver, the order cited by Plaintiff as requiring Sanchez to turn over devices for forensic imaging was agreed to by the parties in that case. *Id*. at Doc. 73 at 1 and 4 (noting the parties agreement and consent to the order entered).

22. Disputed. *See* n.1 above. First, there is no evidence that the Google Drive was "National's" and not Sanchez's personal drive. Skepko testified that Sanchez created the drive before his time and she was the originator and administrator when he learned of the account and he admitted that many others at Plaintiff had access to that Google Drive account beyond Sanchez and that they had separate credentials to access the account. Skepko Dep. at 123:13-126:5. Plaintiff admitted to approving the use of that Google Drive. Skepko Dep. at 127:14-18. Plaintiff also did not know what documents

---

[3] Plaintiff improperly asserts inadmissible statements concerning the forensic imaging and metadata of Sanchez's electronic devices. Motion at ¶ 19 (citing Skepko Dep. at 128:10-129:3), ¶ 22 (citing Skepko Dep. at 130:22-131:9). Courts routinely determine that the analysis and interpretation of metadata requires expert testimony, but National has not disclosed any expert who will testify regarding metadata here. *See, e.g., Highland Consulting Group v. Minjares*, 2021 WL 3793026, at *1 (S.D. Fla. Aug. 26, 2021). Thus, Defendants object, pursuant to Fed. R. Civ. P. 50(c)(2), that this assertion cannot be presented in a form that would be admissible in evidence.

[4] Defendants further disputes the representations related to the conduct of Sanchez, which are based solely on the self-serving statements by National's corporate representative. *See* Motion at ¶¶ 19, 21, 22. National has proffered no other proof that any of these allegations are true.

had actually been copied or what specifically was done with the Google Drive, but they thought (per inadmissible hearsay, *see* n.1 above) that "in a sense" she copied or transferred documents that were on the drive. Skepko Dep. at 130:8-23. Skepko admitted that he "can't say every single document… but a very large majority, if not all of it [the Google Drive] was copied to it" and that the Google Drive copying activity was done after he cleaned all non-therapy materials out, "so she had to have another copy of it at some point" outside of the Google Drive. *Id*. at 183:5-25.

23. Undisputed that Sanchez was solicited to work at Ascendo. Disputed that she was solicited for a position that would violate any restrictive covenant and that she was solicited to violate any obligations regarding the handling of Plaintiff's data and information. Aver that no one involved in the solicitation was subject to any restrictive covenants with National when the alleged solicitations occurred. *See, e.g.,* Motion at p.17, n.7 (confirming Costello does not have a restrictive covenant at issue in this case).

24. Undisputed that Costello and Sanchez discussed how Sanchez could work at Ascendo in a way that would not breach a restriction or cause Plaintiff to sue Sanchez. Disputed that Costello had ever seen Sanchez's agreement with Plaintiff before this case was filed and disputed that Costello knew any of the actual terms of Sanchez's agreement with Plaintiff. Dkt. 134-4 at 280:22-23, 282:5-6, 308:22-309:3 (Costello "didn't know what she [Sanchez] signed"). Aver that Costello did not hire Sanchez, Ascendo did. Dkt. 134-4 at 78:20-25.

25. Disputed that Costello inquired with a lawyer about Sanchez being able to work for Ascendo. The texts confirm that Costello attempted to connect Sanchez with a

6

lawyer. It is undisputed that Costello text the words referenced in this paragraph, but disputed as to their meaning. As Costello testified (and Plaintiff omitted from the Motion) Costello's comments were saying the lawyer "was too busy" to talk to Sanchez. Dkt. 134-4 at 283:25-284:5. The entirety of the text is: "Oh no. I texted Travis and asked if he was going to be able to help you and his response wasn't good 😭 [.]" There is no evidence that statement referred to the attorney's opinion on any issue. Disputed that the cited Meadows testimony supports Plaintiff's conclusion that Costello inquired about Sanchez's agreement with counsel as Meadows said he didn't know if Costello put Sanchez in touch with a lawyer or not. Dkt. 134-7 at 87:16-19.

26. Disputed. The messages did not conclude with the referenced statement as it comes in the middle of texts where Sanchez explains she was juggling the case filed against her by National and trying to get a new job. Dkt. 134-4 at Ex. 39 at p.41. Sanchez went on to explain that she was trying to have a lawyer advise her about working for Ascendo and then what her position needed to be to avoid problems. *Id.* at Ex. 39 at p 42 of 48. Costello explained (consistent with the texts) that her comment about Sanchez being able to make enough money "to make sure National eats shit" was her way of saying that if Sanchez was sued (which Costello said Plaintiff was known to do even when people had done nothing wrong), that Sanchez would be able to pay to defend herself and that Plaintiff would not be able to make Sanchez tap out of a case just because Sanchez couldn't afford to defend herself. Dkt. 140-3 at 291:10-

292:16. Costello was not aware of the injunction against Sanchez at the time and Sanchez had represented to Costello that Sanchez had done nothing wrong. *Id*.

27. Undisputed that Sanchez started working for Ascendo on or about 5/2/2022. Disputed that the "eat shit" comment was a "conclusion" that "satisfied" Sanchez. Sanchez was going to be doing different work from what she did with Plaintiff and she was working with counsel to try to avoid violating any restriction. Dkt. 134-4 at Ex. 39, pp.40-42; Dkt. 140-3 at 271:14-19 (National didn't do specialty pharmacy staffing), 293:9-294:20, 295:16-296:3.

## II. MEMORANDUM OF LAW

### A. Legal Standard.

Summary judgment is only appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, the Court must construe the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Cromity v. City of Orlando*, 702 F. Supp. 3d 1223, 1235 (M.D. Fla. 2023) (citation omitted).

### B. Genuine Issues of Material Fact Preclude Summary Judgment Against Costello with Respect to Count II (Tortious Interference with Sanchez's Agreement)

To prevail on its tortious interference with contractual relations claim (Count II), National must show that there are no genuine disputes of material fact as to (1) the existence of a contract; (2) Costello's knowledge thereof; (3) Costello's intentional and

8

unjustified procurement of a breach thereof; and (4) damages.[5] *Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1215 (11th Cir. 2018). An actual breach is necessary to succeed on a tortious interference claim. *Bergeron Environmental and Recycling, LLC v. LGL Recycling, LLC*, 398 So. 3d 988 (Fla. 4th DCA 2024), citing *Gerber v. Keyes Co.*, 443 So. 2d 199, 200-01 (Fla. 3d DCA 1983) (holding that no cause of action for tortious interference existed where the contract was never breached); *Symon v. J. Rolfe Davis, Inc.*, 245 So. 2d 278, 280 (Fla. 4th DCA 1971) (finding no cause of action for tortious interference with a business relationship in the absence of a breach). National's claim fails across the board.

1. <u>The at-issue contract is not enforceable under Florida law and does not satisfy the first element of the claim</u>

The at-issue provisions of the underlying contract entered by Sanchez are post-employment restrictions governed by Florida law. Dkt. 43-2 at ¶ 9. This means that to satisfy the first element of its tortious interference claims, Plaintiff is required to prove the existence of a legitimate business interest that warrants the enforcement of Sanchez's restrictive covenants. Fla. Stat. § 542.335(1)(B). Without that showing, there is no valid contract with which Costello could be found to have interfered.

Arguing that a legitimate business interest exists, Plaintiff falsely states that Judge Byron "already held that Sanchez's Noncompetition Agreement is supported by legitimate business interests and enforceable under Florida law." Motion at 7. That

---

[5] Plaintiff does not seek summary judgment as to the fourth element of the tortious interference claim (damages). See Motion at 9.

never happened. The cited Order says: "Defendant does not contest that the Agreement is a valid contract signed by Defendant, that it was reasonable in time and area, or that it was made for the purpose of a legitimate business interest." *Nat'l Staffing Sols., Inc. v. Sanchez*, 626 F. Supp. 3d 1247, 1252 (M.D. Fla. 2022). Sanchez's decision to not contest enforceability does not preclude Costello from doing so and does not create binding precedent.

Plaintiff also cites *Nat'l Staffing Sols., Inc. v. Armstrong*, 2024 WL 1657193 (M.D. Fla. Jan. 25, 2024) as another order where legitimate business interests were found. Motion at 7, n.2. However, in *Armstrong*, the Court merely noted "Plaintiff pleads that Defendant's alleged wrongdoing has damaged 'the security, integrity, and availability of National's computer systems and other confidential and proprietary information,' (Doc. 1, ¶ 53), which section 542.335(1)(b) lists as a legitimate business interest sufficient to justify a restrictive covenant." *Armstrong*, 2024 WL 1657193, at *5. The Court did not analyze any facts or evidence, or make any findings of fact. Instead, it improperly concluded, based entirely on Plaintiff's allegations, that a legitimate business interest existed. Neither case supports, let alone constitutes evidence of the existence of a legitimate business interest that justifies the restrictive covenants in Sanchez's agreement at issue here.

Beyond that, Plaintiff points to arguments it raised in Section II.A. of the Motion with respect to the illegality defense. *See* Motion at n. 2. In this Section, Plaintiff improperly attempts to expand the previously limited allegedly legitimate business interests at issue to include not only allegedly confidential and proprietary

10

information, but so-called trade secrets and customer and client relationships. *See* Motion at 11-15 (arguing the existence of a legitimate business interest in relationships and trade secrets). Arguments regarding relationships and trade secrets constituting a legitimate business interest are improper as Plaintiff was asked to identify all legitimate business interests that it claims justify or necessitate the Sanchez's restrictions and it only identified "confidential and proprietary business information[.]" *See* Dkt. 140-5 at No. 2. It cannot now, after the close of discovery, expand the scope of that position.

For information to qualify as a legitimate business interest, National must ultimately demonstrate that the at-issue information is valuable, confidential, unique to National, and not otherwise available to their competitors. *Anich Indus., Inc. v. Raney*, 751 So. 2d 767, 771 (Fla. 5th DCA 2000). National's generic and conclusory statements that it possesses lists of clients and individuals for placement roles are not sufficient to satisfy that burden, let alone to warrant entry of summary judgment in its favor. Where National attempted to be specific, the identified material is readily available throughout the industry, which creates a genuine issue of material fact regarding the nature of such information and whether it could constitute a legitimate business interest. *See* Griffin Dep. 71:7-16 (filed at Dkt. 138-8, under seal filed as 151). *See* Skepko Dep. at 141:4-16, 143:3-16, 151:22-152:6, 154:11-19, 244:23-245:3.

To the extent the court considers Plaintiff's arguments regarding relationships, it should reject Plaintiff's theory as there is no evidence of protectable relationships in the record, Plaintiff has not attempted to put forth evidence of the relevant considerations (*see Vital Pharm., Inc. v. Alfieri*, 23 F.4th 1282, 1291, (11th Cir. 2022),

*Evans v. Generic Sol. Eng'g, LLC*, 178 So. 3d 114, 117-18 (Fla. 5th DCA 2015 and *IDMWORKS, LLC v. Pophaly*, 192 F.Supp.3d 1334, 1340-1341 (S.D. Fla. 2016)), and it again misrepresented testimony (this time of Munch) that it relies upon for its position. *See* § I above, at ¶ 9.

Even if the Court determines that there is no genuine dispute regarding whether the information National placed at issue constitutes a legitimate business interest, National was required to demonstrate how Costello used that information to unfairly compete with it. *Lucky Cousins Trucking, Inc. v. QC Energy Res. Texas, LLC*, 223 F. Supp. 3d 1221, 1226 (M.D. Fla. 2016). National did the opposite. It consistently testified that the information was shared with third parties without confidentiality protections, came from third parties or public sources, and that it could not otherwise identify any specific harm associated with Defendants use of the documents or information. *See, e.g.*, Dkt. 140-3 at 94:23-95:4, 97:6-12, 119:10-14, 158:18-159:18, 160:20-161:3, 176:25-177:4, 177:5-8, 178:14.

        2. <u>Costello lacked the requisite knowledge of Sanchez's agreement</u>

To satisfy the second element, National was required to demonstrate that Costello had sufficient knowledge of Sanchez's agreement and then intentionally procured its breach without justification. It is undisputed that Costello never saw the agreement between Sanchez and National until the instant lawsuit was filed and she was unaware of the specific terms, if any, that Sanchez agreed to. Dkt. 134-4 at 280:22-23, 282:5-6, 308:22-309:3; Dkt. 140-3 at 280:22-23, 309:2-3, 282:5-6. National's corporate representative even testified there is no evidence that Sanchez sent her

12

agreement to Costello and National otherwise has no knowledge of any other defendant having knowledge of Sanchez's agreement with National (Dkt. 140-3 at 208:3-20). Moreover, not all of Plaintiff's restrictive covenants with its employees are the same, so the mere fact that Costello signed her own unique agreement with Plaintiff does not confer upon her knowledge of the terms of Sanchez's agreement. *See* Skepko Dep. at 207:21-23. Simply knowing that someone has an agreement, without knowing the specifics terms of that agreement is not sufficient to satisfy the second element of a tortious interference claim.

> 3. <u>Costello did not intentionally or unjustifiably procure a breach of Sanchez's agreement</u>

Plaintiff appears to only argue that Sanchez breached her agreement through her employment with Ascendo. *See* Motion at § I. Plaintiff does not mention anything about the additional allegations in the Amended Complaint regarding Sanchez's alleged breaches by taking and sharing of Plaintiff's information.[6] Focusing on Plaintiff's argument in the Motion, summary judgment must be denied for a simple reason: Sanchez's agreement did not prohibit her employment at Ascendo. This is undisputed. A review of the agreement confirms there is no non-competition restriction (despite the agreement's title). The only purportedly restricted conduct is the solicitation and hiring of certain employees and representatives of National and the solicitation and acceptance of business from actual or targeted prospective

---

[6] Regardless, there is no information that any Costello misappropriated any clinician candidate list or that National training materials were shared by Sanchez with any Defendant. Ex. C at 227:25-228:7, 231:21-232:9; *see also* Skepko at 158:18-22.

National customers. Dkt. 43-2 at ¶¶ 2-3; Skepko Dep. at 205:9-21. There is no record support for Plaintiff's positions that Costello's discussions with Sanchez about coming to work for Ascendo and even working with Sanchez at Ascendo violate the agreement. If anything, the texts indicate Costello's concern for Sanchez to *not* breach the terms of any potential agreement she may have with National. *See* Dkt. 140-3 at 280:4-14.

National also misrepresents Costello's text messages about speaking with an attorney, asserting "Costello even inquired with legal counsel on the issue and told Sanchez 'oh no . . . his response wasn't good.'" *See* Motion, p. 22, citing Dkt. 140-3 at 283:25-284:3. Plaintiff ignored, Costello's undisputed testimony that she did not help Sanchez find an attorney, she merely provided an attorney's contact information, and her statement that "his response wasn't good" referred to the fact that the attorney was "too busy" to help Sanchez. *See* Dkt. 140-3 at 281:5-6, 281:14-15, 284:4-5. The text does not establish (as Plaintiff argues) that it would not be good for Sanchez work for Ascendo due to her Agreement with National.

National also points to Costello's text that Sanchez "can make enough money here to make sure National eats shit if you want" while arguing that Costello acted with actual malice to harm National. *See* Motion, p. 9. Costello explained that this text referred to the fact that Sanchez would be able to make enough money working for Ascendo to cover her legal fees in the lawsuit brought against her by National. *See* Dkt. 140-3 at 291:19-292:12. This critical explanation was omitted from National's Motion. Moreover, National is not harmed by Sanchez making money from another employer.

14

Without any evidence of breach of Sanchez's agreement through her Ascendo employment, the relief sought by Plaintiff must be denied. *Bergeron Environ. and Recy., LLC*, 398 So. 3d at 988; *Gerber*, 443 So. 2d at 200-01; *Symon*, 245 So. 2d at 280.

### 4. There is no evidence of damage caused by the alleged interference

Finally, National incorrectly represents that the measure of damages is an issue for trial. In fact, National has confirmed that it has not quantified any damages in this case, nor can it causally relate any lost revenue to any Defendant or any cause of action. *See* Skepko Dep. 158:18-22 (no evidence of damage by transmission of Encompass list allegedly provided by Sanchez), *id*. 160:20-161:3 (no evidence of damage by transmission of Saber list allegedly provided by Sanchez), *id*. 249:13-15 (no evidence of damage by use of email templates allegedly provided by Sanchez), *id*. 191:9-12 (no evidence of damage as a result of Sanchez accessing National's data and information), *id*. 241:16-21 (no evidence of amount of damages as to any particular count in the Amended Complaint), *id*. 241:5-242:5 (no evidence of amount of damages as to any individual defendant); Dkt. 140-5 at No. 7 (describing alleged damages caused by Costello, but not mentioning any interference or Sanchez). Therefore, there is no triable issue on damages because National has none to speak of. In sum, National is not entitled to summary judgment on any element of its claim for tortious interference with the Sanchez Agreement against Ascendo, and National's Motion should be denied.

### C. Genuine Issues of Fact Preclude Summary Judgment with Respect to Costello and Munch's Affirmative Defenses

1. <u>Illegality – Affirmative Defense No. 1</u>

For the reasons described in § II.B.1. above, Sanchez's at issue restrictive covenants are illegal and therefore unenforceable under Florida law. At a minimum, genuine disputes of material fact as to the illegal nature of those covenants preclude summary judgment as to this defense.

2. <u>Competition Privilege – Affirmative Defense No. 2</u>

Plaintiff argues Costello and Munch used improper means in furtherance of their competition and, as such, they cannot meet their burden with respect to the competition privilege defense. In making this argument, Plaintiff falsely argue that Costello and Sanchez received legal advise counseling against Sanchez working for Ascendo and implies that Costello advised Sanchez working for Ascendo was not prohibited. The record does not support Plaintiff's position and it never happened. Dkt. 134-4 at 283:25-284:5; Dkt. 134-7 at 87:16-19; Dkt. 134-4 at Ex. 39 at p.41-42; Dkt. 140-3 at 291:10-292:16. Even if some texts initially taken out of context may be interpreted as Costello improperly advising Sanchez about what constitutes a violation of the restrictions, that is far from undisputed and constitutes genuine issues of material fact precluding summary judgment on this defense.

3. <u>Failure to Mitigate – Affirmative Defense No. 3</u>

First, National argues that the failure to mitigate is a denial, and not an appropriate affirmative defense. That is not accurate or the law. Among other things,

16

this defense asserts that Plaintiff failed to timely seek relief and otherwise take reasonable steps to mitigate or reduce the damages it claims. In the Motion, National admitted it waited to file the instant case for almost a year after learning of conduct that it asserts support the claims against Costello and Munch. Motion at 20-21. During that time, it alleges it continued to incur some amount of damages. Dkt. 137-1 at 6-8. This timeline reflects a genuine issue of material fact as to whether National failed to take reasonable steps to mitigate its alleged damages.

Further, National argues Costello has failed to plead or produce evidence explaining how National could have mitigated its damages. But it is National's own failure to produce evidence of its alleged damages that hamstrung Costello's ability to cite evidence of National's failure to mitigate. *See* Dkt. 137-2 at 47:16-19, 58:12- 15, 62:4-7, 63:2-11, 82:1-82:25. Indeed, National's damages expert identified multiple factors other than Defendants' purported conduct which could have resulted in National's decline in revenue, but the expert failed to evaluate the potential effects of any of these other factors. *See id*. at 44:7-25. Additionally, National's Rule 26 disclosures failed to include any damages calculation. *See* Defendants' Motion for Summary Judgment (Dkt. 138-13), Ex. M. Ignoring the fact that affirmative defenses are pled in order to avoid waiver, in the alternative, and based on the limited information known to Defendants before discovery, Plaintiff seeks to require Defendants to plead this defense with a level of detail not present at any point in this case, including in Plaintiff's written discovery responses, depositions, and expert reports. Without knowing the pertinent information of the amount and composition

17

of National's damages, Defendant cannot yet know the extent of National's failure to mitigate. Thus, summary judgment is not merited.

To the extent this defense is based purely on the failure of Plaintiff to take reasonable measures to keep information secret, it is withdrawn and Plaintiff's request for summary judgment on that point should be denied as moot.

### 4. FUTSA Preemption – Affirmative Defense No. 4

This Court's denial of Motions to Dismiss Count II arguing it was preempted by Count III does not waive Defendants' ability to assert the preemption defense later in the case. Dkt. 59. Moreover, the record (developed since the Court's previous Order) supports a finding of preemption as to Count II. First, there is no evidence of any breaches of the Sanchez's agreement other than the alleged taking and sharing of National's information, which National has interchangeably referred to as both confidential and trade secret information. *See, e.g.,* Dkt. 140-5 at Nos. 2 and 3. With no evidence of Sanchez breaching the solicitation and service restrictions in her agreement, we are left entirely with the information related conduct, i.e., the misappropriation of trade secrets at issue in Count III. Dkt. 43 at ¶¶ 76-90. Accordingly, Count II would indeed be appropriately preempted by Count III, as the Sanchez tortious interference claim could only be based on allegations of trade secret misappropriation in Count III. Thus, the preemption defense remains applicable.

### 5. Predisposition to Breach – Affirmative Defense No. 6

Even assuming the at-issue restrictive covenants are enforceable, Florida law recognizes that "a party's 'predisposition to breach ... precludes any finding that [it]

18

was induced to breach by [a third party].'" *Ingenuity, Inc. v. Linshell Innov. Ltd.*, 644 Fed. Appx. 913, 916 (11th Cir. 2016) (granting summary judgment) (citing *Farah v. Canada*, 740 So. 2d 560, 562 (Fla. 5th DCA 1999); *Chi. Title Ins. Co. v. Alday–Donalson Title Co. of Fla.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002)). Here, Sanchez's alleged conduct regarding misappropriating information took place while she was still employed at National and long before Costello or Munch communicated with her about Ascendo. Further, Benami's and Sanchez's agreements did not bar their work at Ascendo or another competitor outright. Both Benami and Sanchez, however, were solicited to work at Ascendo by people other than Costello and Munch. Costello was adamant about taking steps to ensure no breaches of any agreements occurred. If they did commit any breaches, it was at Benami's and/or Sanchez's own volition, not because of any conduct on the part of Costello or Munch.

      6. <u>Laches - Affirmative Defense No. 7</u>

National admits it waited to file the instant case for almost a year after learning of conduct which it asserts support the claims against Costello and Munch. Motion at 20. Without citation to any evidence, Plaintiff claims it was engaged in "pre-suit negotiations" which "failed" before it filed suit. *Id*. With no cited evidence of such negotiations and no other justification for its alleged delay in seeking relief, there is a genuine issue of material fact that precludes summary judgment on this defense.

Similarly, the argument that Costello has unclean hands because she "intentionally sought to usurp the restrictive covenants between National and Sanchez" is uncited and unsupported by the record. Motion at 21. To the contrary,

19

Costello took steps to do the opposite, which is confirmed by contemporaneous records. *See, e.g.,* Dkt. 140-3 at 280:4-14. Costello and Munch do not have unclean hands in this situation and the genuine disputes preclude summary judgment on the laches defense on these grounds as well.

I. **CONCLUSION**

Based on the foregoing, Plaintiff's Motion should be denied.

Dated: July 22, 2025                        Respectfully submitted,

By: */s/ Christopher S. Prater*
Christopher S. Prater
Florida Bar No.: 105488
cprater@pollardllc.com
**Pollard PLLC**
401 E. Las Olas Blvd., #1400
Fort Lauderdale, FL 33301
Telephone: 954-332-2380
Facsimile: 866-594-5731
*Counsel for Defs Munch and Costello*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of July 2025, the foregoing document was furnished via CM/ECF to all counsel of record.

By: */s/ Christopher S. Prater*
Christopher S. Prater