UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NATIONAL STAFFING SOLUTIONS,
INC., a Florida corporation,

    Plaintiff,

v.                               Case No. 6:23-cv-01542-CEM-LHP

ASCENDO REOURCES, LLC, et al.

    Defendants.
_____/

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR SPOLIATION SANCTIONS**

Plaintiff, NATIONAL STAFFING SOLUTIONS, INC. ("National"), pursuant to the Court's Order (Doc. 166), files this Reply in Support of its Motion for Spoliation Sanctions (Doc. 147).

**I.    Defendants Affidavits Do Not Establish a Lack of Spoliation.**

    A.    The Affidavits At Best Contradict Other Evidence of Spoliation.

Defendants offer two self-serving affidavits that claim records from the Domain are contained on Ascendo's computer systems. Docs. 156-1, 156-2. These post-hoc creations contradict prior testimony by Ascendo's corporate representative and Meadows.

Meadows's affidavit generally tracks what National knows: Meadows set up the Domain to send mass email blasts on behalf of Sanchez to build her book of business at Ascendo. Doc. 156-2 ¶¶ 6-8, 13. Meadows now states that he, not

1

Sanchez or Costello, sent all emails via the Domain purporting to come from either Costello or Sanchez, respectively. *Id.* ¶ 10.

Meadows claims that all of these emails were backed up to an internal Ascendo system. *Id.* ¶¶ 14-15. This directly contradicts his prior testimony that nothing was done to preserve the contents of the Domain and that the emails from the Domain were inaccessible. Doc. 147 at 9-10. His newfound recollection of a comprehensive backup setup, and belief the emails are still on Ascendo's servers, is, at best, dubious and demonstrates Meadows's questionable veracity. Doc. 156-2, ¶ 15. Indeed, the statement by Meadows that "the emails sent to/from ascendohc.com would have been backed up automatically by Ascendo's server" (Doc. 156-2, ¶ 14) must be pure speculation because Meadows previously testified that he did nothing to search for these emails. In pertinent part, Mr. Meadows testified

> Q. And I assume, given your previous answers, that in this lawsuit, you've done nothing to search any e-mails stored for ascendohc.com e-mail domains; is that correct?
> A. I have not.
> . . .
> Q. You search any e-mail accounts whatsoever for any documents responsive to discovery requests in this lawsuit?
> A. Not that I recall.

Meadows Dep. 182:9-24. Because Meadows previously made no effort to search for responsive e-mails, his contradictory affidavit can only be based on pure speculation and should be disregarded. *See Fouts v. Avelo Airlines, Inc.*, Case No.

2

8:23-cv-508-WFJ-NHA, 2025 U.S. Dist. LEXIS 53928, *9 (M.D. Fla. Mar. 24, 2025) ("If a party attempts to create an issue of fact through an affidavit, that affidavit 'may be disregarded if it flatly contradict[s] earlier deposition testimony without explanation.'") (quoting *Pivac v. Component Servs. & Logistics, Inc.*, 570 F. App'x 899, 901 (11th Cir. 2014)).

Seemingly trying to confirm Meadows's newfound and convenient recollection, Ascendo tenders the Fieto affidavit which affirmatively states that the Domain emails are on Ascendo's systems. Doc. 156-1. However, given the significant contradictions between these new affidavits and prior testimony (including of affiant Meadows), this Court cannot find that no spoliation occurred. Further, as discussed in Section III, below, the state of production does not appear consistent with the scope and number of documents that would be expected given the stated use of the Domain.

 B. <u>Defendants Self-Serving Affidavits Must Be Disregarded Based on Ascendo's Prior Testimony.</u>

Regardless, as a matter of law the affidavits must be disregarded in their entirety. This new testimony is the latest head of the hydra of Ascendo's failure to present a properly prepared corporate representative. *See generally* Docs. 104, 128, 145 at 2-4.

Ascendo's corporate representative offered no testimony regarding this alleged comprehensive backup system. Rather, he denied the Domain even existed. Holzer Dep. 105:14-17. And the issue of the Domain cannot have been a surprise to

3

him because the administration of the Domain was one of the topics identified in the Notice of Deposition. *See* Doc. 100-1, ¶ 52. Despite being directly asked multiple times, Ascendo's corporate representative could not testify that Ascendo had backed up or preserved the Domain. Holzer Dep. 108:22-109:15, 111:8-112:4; 116:3-22.

When a corporate representative is unprepared to testify on a topic, the Court may prohibit the organization from introducing evidence on such matters later in the proceeding. Fed. R. Civ. P. 37(b)(2)(A)(ii); *Cont'l Cas. Co. v. First Fin. Emple. Leasing, Inc.*, 716 F. Supp. 2d 1176, 1190 (M.D. Fla. 2010).

> When a corporation's designee legitimately lacks the ability to answer relevant questions on listed topics and the corporation cannot better prepare that witness or obtain an adequate substitute, then the "we-don't-know" response can be binding on the corporation and prohibit it from offering evidence at trial on those points. . . .
>
> [A] corporation which provides a 30(b)(6) designee who testifies that the corporation does not know the answers to the questions will not be allowed effectively to change its answer by introducing evidence at trial. . . .
>
> The conclusion that the corporation is bound at trial by a legitimate lack of knowledge response at the 30(b)(6) deposition is, for all practical purposes a variation on the rule and philosophy against trial by ambush.

*QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676, 690 (S.D. Fla. 2012) (quotations and citations omitted). The court in *QBE Insurance* precluded the plaintiff from taking any position at trial on issues for which its corporate representative provided no or inadequate testimony. *Id.* at 698.

Such a conclusion is equally merited here. National obtained binding

4

testimony from Ascendo's corporate representative that the Domain emails were not backed up or preserved. This corroborated National's review of the HostGator records and the earlier testimony of Meadows that no preservation efforts were taken as to the Domain emails.

Relying on this sworn testimony, National brought a motion for spoliation sanctions in the first place. Ascendo cannot now scream "surprise" and introduce evidence on matters it previously failed to testify on. After all, "[i]t would be fundamentally unfair if [Ascendo] did not provide 30(b)(6) testimony on certain matters, proclaimed a lack of its own knowledge, . . . and then at trial take affirmative positions on these topics and seek to introduce evidence against [National]." *QBE Ins.*, 277 F.R.D., at 698.

Because Ascendo is bound by the prior testimony of its own representative that no preservation efforts were taken, the Court must reject this new evidence on that topic. To hold otherwise would condone Ascendo's lack of preparation of its corporate deponent and endorse trial by ambush for corporate parties to present evidence piecemeal as it becomes convenient for them.

## II. National Sought the Domain's Contents Throughout Discovery.

National did not serve a request for "all contents from the @ascendohc.com domain."[1] However, documents contained on the Domain would have been

---

[1] Given the course of discovery in this case, National is confident that such a request would be objected to by Ascendo as overly broad and that such objection likely would have been sustained. National therefore respectfully asserts that the absence of this exact request is of minimal relevance to the question of spoliation.

relevant to:

• Requests 8, 12, 15, 26, 27, 28, 29, 41, 42, 45, and 46 in National's First Requests to Production to Ascendo dated February 29, 2024 (Doc. 74-1);

• Requests 2, 3, 4, 14 in National's Second Requests for Production served Feb. 14, 2025 (Doc. 84-1);

• Numerous requests for communications made in National's Third Requests for Production served April 24, 2025 (Doc. 103-1); and

• Request 145 in National's Third Requests for Production served April 24, 2025 (Doc. 103-1).

Most relevant, National's First Requests for Production sought the following:

> 26. All Documents that constitute, demonstrate, or comprise the email addresses set up for, or that access was provided to, Sanchez.
>
> 27. All email communications sent from or received by the email addresses identified in response to Interrogatory No. 13 directed to Ascendo.

Doc. 78-1 at 15. National has sought documents from the Domain through a number of discovery requests during the entire pendency of the discovery period.

### III. Ascendo's Production Does Not Indicate All Domain Emails Were Preserved Or Produced.

In its responses to the First Requests for Production 26 and 27, Ascendo agreed to produce all emails from hsanchez@ascendo.com and heidi@ascendohc.com. Doc. 78-1 at 15.

Ascendo refused to produce documents in response to the majority of the remaining requests identified in the prior section. National moved to compel as to

6

those requests. Docs. 78, 84. The Court sustained Ascendo's objections as to the Second Requests for Production, and the majority of the First Requests for Production, and therefore National has received nothing (whether from the Domain or not) in response to such requests. Docs. 82, 95.

Ascendo originally objected and refused to produce anything in response to the Third Requests for Production. After motion practice, Ascendo ultimately produced certain documents. Docs. 103, 121. Documents produced by Ascendo in response to the Third Requests contain 10 emails from Sanchez using the Domain.

While these productions did contain some emails from the Domain, these are a few instances of bounce backs from the mass mailings that Meadows testifies the Domain was used for. The outbound mass emails themselves appear absent. Most of the emails containing an address on the Domain also contain a regular @ascendo.com email address, and thus would be retrievable through those systems even if the Domain had not been preserved. That a few documents could have been obtained from alternative sources does not mean no spoliation occurred. *Skanska USA Civil Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1313 (11th Cir. 2023).

Moreover, National has not received more than a handful of emails from the Domain emails for either Costello or Meadows. The general lack of production of emails from the Domain is highly inconsistent with the claim that it was used for mass solicitation mailings and fully preserved. Substantially more records would be expected.

7

## IV. The Motion is Timely.

As set forth in the Motion, any earlier request seeking sanctions for spoliation would have been premature because this issue did not become ripe until both Meadows and Ascendo's corporate representative confirmed that the Domain was not preserved. National could not take the deposition of Ascendo's corporate representative until June 20, 2025, after Ascendo failed to appear at its properly noticed deposition *during the discovery period*. Then, National filed the Motion less than a week later, promptly bringing this matter to the Court's attention. The fact that the discovery period has closed is not dispositive.

WHEREFORE, for the reasons set forth in the Motion and supported herein, National asks the Court to enter default judgment against Ascendo and Meadows, or alternatively, to enter a curative adverse inference to even the scales of justice.

Dated: August 6, 2025.

s/ Scott A. Richards
**Scott A. Richards, Esq.**
Florida Bar No. 72657
Primary: srichards@losey.law
Secondary: docketing@losey.law
**Losey PLLC**
1420 Edgewater Dr.
Orlando, FL 32804
Telephone: (407) 906-7389
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing document was filed with the Clerk of Court this 6th day of August 2025, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

**s/ Scott A. Richards**
**Scott A. Richards, Esq.**
Florida Bar No. 72657
